STEBBINS and another *against* KELLOGG :

IN ERROR.

*A.* being indebted to *B.* in a certain sum, *C.,* at the request of *A.,* gave his promissory note to *B.* for that sum, payable on demand : such note being given by *C.,* and received by *B.,* as collateral security for such debt, and to be in full thereof, when paid. Afterwards, *D.,* being indebted to *C.,* gave, at *C's* re-

*Fairfield,*
June,
1824.

Stebbins
*v.*
Kellogg.

quest, his promissory note to *B.*, for the amount due on *C.'s* note; and *B.* thereupon delivered up *C.'s* note to *D.* *D.'s* note has not been paid, nor has *B.* taken any measures to collect it, though several years have elapsed since it was given, and *D.* has at all times been able to pay it. Held, 1. that the effect of giving up *C.'s* note, was not payment of the original debt; 2. that it constituted no appropriation of the pledge; 3. that the taking of *D.'s* note, in the manner stated, did not operate as a payment conditional or absolute, but as a mere substitute for the note of *C.*, which, by the express agreement of the parties, was received as collateral security for the original debt; 4. that *B.*, not having taken upon himself the obligation of collecting *D.'s* note, his forbearance to resort to that measure, for satisfaction of his debt, did not convert what he received as security, into payment.

This was an action of book debt, brought by *Kellogg*, against *Jones* and *Stebbins*, which was referred to auditors. At the term of the superior court, in *December*, 1822, the auditors reported a balance against the defendants of 56 dollars, 65 cents. The defendants filed a remonstrance to the report, stating the following facts. On the 19th of *October*, 1816, the defendants were indebted to the plaintiff on book, in the sum of 223 dollars, and in that sum only. On the same day, the defendants paid to the plaintiff, on this account, 100 dollars; and one *Benoni Stebbins*, at the request of the defendants, gave his promissory note to the plaintiff for the balance, *viz.* 123 dollars, payable on demand; "which note was given by said *Benoni*, and received by the plaintiff, as collateral security for said debt, and to be in full of said debt, when paid." On the 19th of *June*, 1817, one *Joseph Pettis*, being indebted to *Benoni Stebbins*, in a sum larger than said note and interest, at his request, gave his promissory note to *Ezra Ayres*, who was the agent of the plaintiff, payable to him, or bearer, on demand, for the sum of 128 dollars, 75 cents, the precise amount then due on *Benoni Stebbins's* note; and thereupon *Ayres* delivered up *Benoni Stebbins's* note to *Pettis*. No part of *Pettis's* note has been paid, except the sum of 99 dollars, which was paid and indorsed thereon; nor has the plaintiff taken any measures for the collection of such note, though *Pettis* now is, and at all times has been, abundantly able to pay it. The court found these facts, accepted the report, and rendered judgment against the defendants; who thereupon brought the present writ of error.

*N. Smith* and *Booth*, for the plaintiff in error, contended, 1. That by the passing away of *Benoni Stebbins's* note, the original debt was paid. *Harris* v. *Johnston*, 3 *Cranch* 311.

2. That it was an appropriation of the pledge. *The Derby Bank* v. *Landon*, 3 *Conn. Rep.* 62.

3. That the taking of *Pettis's* note, operated as a payment of the original debt. *Kearslake* & al. v. *Morgan*, 5 *Term Rep.* 513. *Anderson* v. *Henshaw*, 2 *Day* 272.

4. That by holding *Pettis's* note, without taking any measures to collect it, from the year 1817, *Kellogg* made it his own, and thus it became payment. *Gould* & al. v. *Robson* & al. 8 *East*, 576. *Anderson* v. *George*, 1 *Burr.* 352. *Chamberlyn* v. *Delarive*, 2 *Wils.* 353. 1 *Esp. Dig.* 132. (*Gould's* ed.) *Clark* v. *Young* & al. 1 *Cranch* 181. 191.

*Sherman* and *Swift*, for the defendant in error.

HOSMER, Ch. J. In order to a right determination of this case, it is necessary that the facts should be precisely understood.

The defendants below were indebted to *Kellogg* in the sum of one hundred and twenty three dollars. On their request, one *Benoni Stebbins* made his promissory note for the aforesaid sum, payable on demand, *as collateral security for the debt*. At a future period, one *Joseph Pettis*, the debtor of *Benoni Stebbins*, on his request, made his promissory note, payable to *Ezra Ayres* (*Kellogg's* agent,) or bearer, on demand, for the above sum and interest; which was delivered to the said *Kellogg*, as his property, and the note of *Benoni Stebbins* was given up. The note of *Pettis*, except the sum of ninety dollars, indorsed upon it, remains unpaid; and *Kellogg*, although the maker has ever been of abundant responsibility, has taken no measures to collect it. The defendants below, on a trial before auditors, in an action brought to recover the original debt, claimed the note of *Pettis* to be in law a payment; but this claim of theirs was disallowed.

These facts appear in a remonstrance to the award of the auditors; and as no suggestion is made, that the note of *Pettis* was ever put in circulation, or that it was accepted in satisfaction of the original debt, or in conditional payment of it, it must be assumed, that the note was not thus accepted, and that it remains in the hands of *Kellogg*. The remonstrance, like any other plea, must be taken most strongly against the party pleading; and from this principle, in connection with the facts stated, it is a warrantable inference, that the note of *Pettis* was received as a substitute for the note of *Benoni Stebbins*, and on a similar

contract. This consideration reduces the case to a very narrow point. The note of *Benoni Stebbins* was received as a collateral security for the original debt, by the express agreement of the parties; and of consequence, *Pettis's* note being substituted for the former, was received for the same purpose. If this view of the subject be correct, and I think it is, there is no ground for a recurrence to presumptions relative to the nature and extent of an obligation, which the parties have definitively settled. As the note of *Pettis* was not accepted in payment of the debt of *Kellogg*, either absolutely or conditionally; and as there can be no pretence, that one debt by simple contract is extinguished by the reception of a security of the same grade; the defendants below had resort to distinct grounds of argument, which I shall consider.

1. It was said, that by *Kellogg's* passing away *Benoni Stebbins's* note, the original debt was paid. The answer to this ground of argument, is, that this note never was passed away, or, in other words, never went into circulation. It was given back to *Benoni Stebbins*, on the substitution of another note.

2. It next was insisted, that there was an appropriation of the pledge; but how this can be true, I am incapable of conceiving. The pledge, that is, *Benoni Stebbins's* note, was delivered back to him, without payment, on his request; and another note received, to occupy its place; and this is nothing in the nature of an appropriation.

3. The defendants below insisted, that the reception of the note of *Pettis* to *Ayres*, by operation of law, was a payment of the original debt. In proof of this position, the case of *Anderson* v. *Henshaw*, 2 *Day* 272. was cited; but the determination in that case was entirely misconceived. The plaintiff, having a demand on book against *Henshaw* and *Williams*, received of *Henshaw* a bill of exchange drawn by him on *Wainwright, Howard & Co.*, and agreed, that when paid, it should be in full of the account. The court adjudged, that the bill, *per se*, was no payment of the original debt; but as it appeared, that the plaintiffs delivered back this bill to *Henshaw*, with a receipt upon it, that they had received " the within amount by bill on Mr. *Joseph Adcock*," this the Court considered as evidence of satisfaction. The first bill, the plaintiffs agreed, was paid, by the substitution of a second. That case proceeded, not on the ground of legal operation, but of the express understanding and agreement of the parties. But in the case on trial, so far from

there having been such an agreement, there is one obviously of
an entirely different character.

The case of *The Derby Bank* v. *Landon,* 3 *Conn. Rep.* 62.
has no bearing on the matter in question.    Upon the ground of
the peculiar practice of this state, it was decided, that the tak-
ing possession of mortgaged premises, by the mortgagee, under
a decree of foreclosure, is, by operation of law, an extinguish-
men of the mortgage debt.    There are no facts in the case be-
fore us, to which this principle is applicable.

*Harris* v. *Johnston,* 3 *Cranch* 311. merely decides this prin-
ciple; that an action cannot be maintained on an original con-
tract for goods sold and delivered, by a person who has receiv-
ed a note as conditional payment, and *has passed it away.*    In
the case under discussion, the note was neither received as con-
ditional payment, nor has it been passed away; and hence the
inappositeness of the case last cited.

*Kearslake* & al. v. *Morgan,* 5 *Term Rep.* 513. determined,
that the plea of a promissory note indorsed to the plaintiff "for
and on account" of a demand for goods sold, was good.    Un-
doubtedly, it was considered as equivalent to the plea of a note
indorsed and accepted in satisfaction of a debt.

None of the cited cases materially bear upon the case before
the court.    There is no ground for the assertion, that the ori-
ginal debt was paid, either absolutely, or conditionally; or that
a promissory note was accepted in satisfaction of the demand.
If the latter were *true,* there could be no question relative to
the sufficiency of the defence.    *Thatcher* v. *Dudley* & ux. 2
*Root,* 169.    *Drake* v. *Mitchell* & al. 3 *East,* 251.    *Kearslake*
& al. v. *Morgan,* 5 *Term Rep.* 513.    The note of *Pettis* was
made and delivered as a substitute for the note of *Benoni Steb-*
*bins;* which was merely a pledge, or collateral security.    It
was never intended as payment, or to be put in circulation;
nor is there a pretence, that it ever went out of the hands of
*Kellogg.*    The original demand is affected by it, in no other
manner, than it would be, if, instead of a *chose in action,* the
thing substituted had been either land, or personal property.

Lastly, it has been said, that *Kellogg,* by retaining the note
of *Pettis* in his possession, for several years, without resort to
any measures for the collection of it, has made it his own, and
that the original debt is thus paid.

The cases cited under this head of argument, sustain the fol-
lowing propositions: that the effect of taking a bill of exchange
or promissory note *in satisfaction of a precedent debt,* is, that

*Fairfield,*
*June,*
*1824.*

*Stebbins*
*v.*
*Kellogg.*

the creditor cannot proceed in an action for such debt, without showing, that he has used due diligence to obtain acceptance or payment; that if the creditor holds such bill or note an unreasonable time, and the person on whom it is drawn, or the maker, becomes insolvent, it is the creditor's loss; and that, if he give time to the acceptor of a bill received as aforesaid, it discharges the endorser. *Anderson* v. *George*, 1 *Burr.* 352. *Chamberlyn* v. *Delarive*, 2 *Wils.* 353. *Clark* v. *Young* & al. 1 *Cranch* 181. 191. 1 *Esp. Dig.* 132. (*Gould's* ed.) *Gould* & al. v. *Robson* & al. 8 *East*, 576 These principles are none of them denied; but they are all inapplicable to the case under discussion. The note of *Pettis* was not received in satisfaction of a *precedent debt*, but as a collateral security only; and *Kellogg* never assumed the obligation of collecting the above note. The meaning of the expression, "the giving of time," has been entirely misconceived. It intends, for example, that the holder of a bill may not tie up his hands, by enlarging the time of performance, so as to preclude himself from suing the acceptor. This would be injurious to the drawer and indorser, who are in the nature of sureties, by the increase of their risk. But an omission to sue, or the want of active diligence, is not "the giving of time," within the legal meaning of the phrase. The holder, in the case put, may forbear to sue, as long as he chooses, if he does not suspend or impair his capacity of suing at pleasure. *Chitty on Bills*, 171. (*Am.* ed.) *Rees* v. *Berrington*, 2 *Ves.* jun. 540. *Trent Navigation Company* v. *Harley*, 10 *East* 34. *Peel* v. *Tatlock*, 1 *Boss. & Pull.* 419. *Wright* v. *Simpson*, 6 *Vesey* jun. 714. 734 *Barnard* v. *Norton*, *Kirby* 193. It is true, a different doctrine was declared, by a respectable judiciary, in *Pain* v. *Packard*, 13 *Johns. Rep.* 174. It was said, if the obligee or holder of a note, who is requested, by the surety, to proceed without delay, and collect the money of the solvent principal, neglects to proceed against him, and he afterwards becomes insolvent, that the surety is exonerated. This case, which derives no support from any quarter, was directly questioned by the late learned Chancellor of the state of *New-York*, in *King* v. *Baldwin*, 2 *Johns. Chan. Rep.* 554. with his accustomed ability, and shown to be opposed to all the authorities. The doctrine of the Chancellor is founded on this convincing principle, that the creditor is not bound to proceed beyond the measure of his assumed obligation. The surety will never be subjected to any disadvantage, unless he is negligent and regardless of his own interest. By the payment of

the debt he has assured, he can resume his note or bill, and take that course which he deems to be most beneficial    If this is inconvenient, he may, on sufficient ground, obtain a decree in chancery, on indemnity to the creditor, compelling him to sue the principal debtor, that as speedy an exoneration as possible may be obtained, from the guarranty.   *King* v. *Baldwin* 2 *Johns. Chan. Rep.* 554. 560.   *Hayes* v. *Ward* & al. 4 *Johns. Chan. Rep.* 123. 132.   But that a court of law can put on a creditor an obligation, to which his contract has not subjected him, or give to the surety a privilege, which, by his agreement, he has relinquished, can never be admitted.

BRAINARD and BRISTOL, Js. were of the same opinion.

PETERS, J. dissented.

Judgment affirmed.