THE MARTIN TIRE AND RUBBER COMPANY (APPLICATION OF THE MARTIN TIRE CORPORATION, CREDITOR) *vs.* THE KELLEY TIRE AND RUBBER COMPANY.

Third Judicial District, Bridgeport, October Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

A contract by a corporation to buy its own stock from one of its stockholders, in case it cannot satisfactorily carry out its corporate purposes, and in that event to pay the same price which the stockholder paid when the corporation was expected to be successful,—is open to the fundamental objection that it attempts to give a preference to that stockholder as against others, and perhaps as against creditors also; and it is furthermore *ultra vires* in the sense of violating public policy as prescribed by § 3429 of the General Statutes.

In the present case the plaintiff agreed with a stockholder of the defendant to buy his stock in that company and to pay him $25,000 therefor, which it did; and the defendant company agreed with the plaintiff to take such stock off its hands at the price it had paid, if the defendant thereafter failed, as it did, to turn out a first-class product. A receiver of the defendant having been appointed, the plaintiff filed its claim for a recovery of the amount paid by it for the stock, which the defendant had agreed, but refused, to take off the plaintiff's hands. *Held* that the defendant had no part or lot in the first agreement, nor, so far as appeared, had it derived any benefit whatever from its performance; and therefore no basis existed upon which the plaintiff could urge that the defendant was estopped from making its defense of *ultra vires.*

A State Referee has no jurisdiction to determine the question of law involved in a defense of *ultra vires;* but he is empowered to find and report all facts bearing upon that question, and also upon the question of the defendant's estoppel *in pais,* if that be asserted by the plaintiff, upon whom the burden rests to establish the facts essential to its support.

No claims of fact in such a case can be advanced in this court which are not supported by the report of the referee.

Argued October 29th—decided December 1st, 1924.

APPEAL by the Martin Tire Corporation, claimant in receivership proceedings, from a judgment of the Superior Court in New Haven County (*Nickerson, J.*) approving and accepting the report of the *Hon. Donald T. Warner,* a State Referee, allowing only $5,368 of its claim against the Kelley Tire and Rubber Company. *No error.*

The Kelley Tire and Rubber Company, hereinafter called the Kelley Company, is a Delaware Corporation formerly doing business in Connecticut in the manufacture and sale of automobile tires and tubes.

The claimant, the Martin Tire Corporation, is a New York corporation engaged in selling tires and tubes. The right of the Kelley Company to use the name "Kelley" on automobile tires being challenged by actual or threatened litigation, negotiations were entered into contemplating that James Martin, president of the claimant corporation, should become associated

with the Kelley Company, and that the corporation should be re-organized under the name of the Martin Tire and Rubber Company, with Martin as president.

In the course of these negotiations the contract, Exhibit 19, was entered into between Edward J. Kelley, president of the Kelley Company, Charles H. Bortell, Jr., its treasurer, James Martin, the Kelley Tire and Rubber Company, and the Martin Tire Corporation. Thereafter these receivership proceedings were instituted by the Martin Tire and Rubber Company as owner of a large majority of the stock of the Kelley Company, upon the ground that its assets were in danger of waste through attachments, litigation, liens and otherwise.

The claim of the Martin Tire Corporation, as presented, was divided into three parts:—

#1 For money loaned to and goods delivered to the defendant   $21,805.33

#2 For merchandise delivered   4,214.92

#3 Damages and losses arising out of breach of the contract above referred to   75,000.00

The State Referee allowed claim #1 in part, and claim #2 in full, and from these allowances neither party appeals. As to claim #3, the referee found the facts, which are not in controversy, and being of opinion that the validity of claim #3 turned wholly upon questions of law, referred the matter to the court, which disallowed claim #3 *in toto*.

This claim is itemized as follows:—

Moneys paid under the contract   $20,000.00

Liability on note   5,000.00

Damages for breach of contract   50,000.00

The item of $50,000 for damages for breach of contract is abandoned.

The defendant filed a counterclaim on which the referee allowed a setoff of $12,881.85 against the claimant, and the net result of the referee's report, as ap-

proved and accepted by the judgment of the court, is as follows:—

| | |
|---|---:|
| Allowed on claim #1 | $14,035.89 |
| Allowed on claim #2 | 4,214.92 |
| | $18,250.81 |

*Contra.*

| | |
|---|---:|
| Allowed on defendant's counterclaim | $12,881.85 |
| Balance due claimant | 5,368.96 |

The controversy in this court relates solely to the validity of the first two items of claim #3, amounting to $25,000, that is to say, whether the contract itself is *ultra vires*, and whether, on the facts found, it was authorized or ratified by the corporation.

*Joseph G. Shapiro*, with whom was *Harry Allison Goldstein*, for the appellant (claimant).

*Albert H. Barclay*, for the appellees (receivers).

BEACH, J. The preamble of the contract, Exhibit 19, is as follows:—

"Whereas, Edward J. Kelley, aforesaid, is desirous of disposing of the shares of stock owned by him in the Kelley Tire and Rubber Company, a Delaware corporation, and

"Whereas, Charles H. Bortell, Jr., and Edward J. Kelley, have made certain representations to the Martin Tire Corporation and made certain proposals to the Martin Tire Corporation, contemplating the association of James Martin, president of the Martin Tire Corporation with the Kelley Tire and Rubber Company aforesaid, and the association of the Martin Tire Corporation with the Kelley Tire and Rubber Company.

"Now, therefore," etc., etc.

Then follow the agreements of the three individual

and two corporate parties, expressed in eighteen paragraphs, of which the first and tenth form the basis for the first two items of claim #3.

In paragraph one the Martin Tire Corporation agrees to purchase from Edward J. Kelley 10,000 shares of the Kelley Company stock, and to pay him $10,000 in cash on the execution of the contract and $15,000 in notes payable in three instalments. This agreement is on its face absolute and unconditional.

Then in paragraph ten it is agreed "between the parties of the second, third, fourth and fifth parts"—that is, between all the parties to the contract except Edward J. Kelley—"that the purpose of this association between James Martin and the Martin Tire Corporation with Kelley Tire and Rubber Company, is the forming of an association with a factory which can manufacture high class tires, and that therefore should it appear, at any time before the notes given to Edward J. Kelley, under this agreement are paid, that the Kelley Tire and Rubber Company is unable to accomplish such object, that the stock of Edward J. Kelley, transferred under this agreement, shall then be returned to the Kelley Tire and Rubber Company, operated under that name or any other name, and any monies paid for such stock shall be returned to the Martin Tire Corporation by Kelley Tire and Rubber Company, whether operated under that name or any other name, and that the Kelley Tire and Rubber Company shall indemnify Martin Tire Corporation with respect to the payment of any notes then outstanding to Edward J. Kelley under this agreement."

Other agreements are that the name of the corporation shall be changed to the Martin Tire and Rubber Company, that Martin shall be made president of the company under its changed name, that Martin and Bortell shall conduct the business operations of the

Kelley Tire and Rubber Company, and that the sales policy, advertising policy, management and finance shall be subject to the joint control of Bortell and Martin.

The transaction thus set forth is that upon representations made by Kelley and Bortell, the Martin Tire Corporation bought Kelley's stock outright and paid for it; that Martin and Bortell were jointly to control the Kelley Company; that if the Kelley Company, under their control, failed to make high class tires, the Martin Tire Corporation should "return" the Kelley stock—not to the seller—but to the Kelley Company, and that in that event all moneys paid to Kelley should be "returned" to the buyer—not by the seller—but by the Kelley Company, which should also indemnify the Martin Tire Corporation against liability on any outstanding notes given to Kelley in part payment for his stock.

The contract on the part of the Kelley Company is to buy its own stock from a stockholder, in case it cannot satisfactorily carry out its corporate purposes, and in that event to buy it at the same price which the stockholder paid for it when the corporation was expected to be successful.

This contract is open to the fundamental objection that it attempts to give a preference to the claimant out of corporate assets as against other stockholders, and perhaps against creditors also, as the facts may appear at the termination of the present receivership. It is also *ultra vires* in the larger sense of being opposed to public policy, for § 3429 of the General Statutes provides that "no corporation shall acquire, purchase and hold its own stock unless to prevent loss upon a debt previously contracted, except with the approval of stockholders owning three-fourths of its entire capital stock given at a stockholders' meeting warned and

held for that purpose"; and no such meeting was held.

Claimant contends that the defendant is estopped from setting up the defense of *ultra vires*, because the contract has been performed by the claimant and the defendant has received the benefit of such performance. This contention is based primarily on the claimant's performance of the contract for the purchase of Kelley's stock for $25,000; but that payment is not available as a basis for the claimed estoppel, for the contract set forth in paragraph one is solely between the claimant and Kelley; the defendant had no part nor lot in it, and there is no finding that it derived any benefit even indirectly from the sale of Kelley's stock to the claimant. Nor will the receipt of the moneys and merchandise referred to in claims #1 and #2 estop the defendant: first, because these transactions had no connection with the *ultra vires* contract expressed in paragraph ten; and second, because the defendant has been fully compensated for such extensions of credit by the allowance of the balance found due from the defendant.

As to the verbal order for $500,000 worth of tires, which is said to have been given by claimant to the defendant, and which was the basis of the abandoned claim for damages for breach of contract, there is no finding that the order was given or accepted. Reference is made to services in the re-organization of the defendant corporation; but there is no finding that the Martin Tire Corporation rendered such services, nor that the re-organization—which was never carried into effect by a transfer of assets—was beneficial to the defendant corporation.

The claimant's brief refers also in general terms to other benefits not specified, and as to these, and to all claims of benefits conferred, it is to be noted that the defense of *ultra vires* was made before the State Referee.

He had no jurisdiction to determine the question of law involved, but did have jurisdiction to find and report all facts bearing on the enforcibility of the claim in question. That was the tribunal before which the claimant was bound to establish the facts upon which it based its asserted estoppel *in pais;* and no claims of fact can now be advanced which are not supported by the report of the referee.

The report contains no findings of benefits received by the defendant from the claimant other than those for which it has been compensated by the allowance of the balance due on claims #1 and #2.

We do not mean to be understood as acquiescing in the claimant's theory, that if the defendant corporation had in fact received a consideration for its illegal contract, it ought to be compelled to do that which the statute forbids it to do.

There is no error.

In this opinion the other judges concurred.