## NORWALK DOOR CLOSER CO., INC. *v.* THE EAGLE LOCK AND SCREW COMPANY

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued April 7—decided May 25, 1966

*Donald Lee Rome,* with whom, on the brief, was *George E. Lodgen,* of the Massachusetts bar, for the appellant-appellee (plaintiff).

*Bruce W. Manternach,* with whom, on the brief, were *Colin C. Tait* and *Bernard Hoban,* of the Illinois bar, for the appellee-appellant (defendant).

ALCORN, J. In this action, the plaintiff, hereinafter called Norwalk, is seeking to recover $100,000 as liquidated damages for the breach of a written contract by the defendant, hereinafter called Eagle, and an additional sum for Eagle's failure to deliver goods which had been ordered under the contract. Claims for consequential damages and for loss of profits and good will are no longer in issue. Eagle counterclaimed to recover $63,574.33 for goods delivered to Norwalk. Norwalk does not dispute this indebtedness. The trial court denied recovery of the $100,000 on the ground that it was a penalty, but it awarded damages to Norwalk of $1687.19 for Eagle's failure to deliver goods ordered under the contract. The court found Eagle entitled to recover $63,574.34 on its counterclaim. This admitted indebtedness is, however, incorrectly stated in the judgment to be $61,887.15. Norwalk has appealed from the judgment, and Eagle has filed a cross appeal.

The basic facts may be summarized as follows: Norwalk owned the right to manufacture door closers together with the tools, dies, patterns and other equipment necessary for their manufacture. On June 22, 1956, after extended negotiations, Norwalk entered into a written contract with Eagle wherein Eagle undertook to manufacture door closers exclusively for Norwalk for seven years, using the tools, dies, patterns and other equipment owned and provided by Norwalk. Norwalk retained the right to extend the contract for an additional five years. Eagle assumed the cost of engineering services and equipment necessary for quantity production up to specified amounts. Beyond those amounts Norwalk assumed the expense, which was to be determined and paid on a basis specified in the contract. When the contract was made, Eagle's chief engineer had estimated that the cost of preparing for quantity production would be approximately $78,750. Eagle actually spent $142,812.67, which was a reasonable expenditure for that purpose.

When the contract was made, Sereno L. Mastorgi was Eagle's president and general manager. In paragraph 13 of the contract, Norwalk reserved the option to terminate the agreement on thirty days' notice to Eagle in the event that Mastorgi should, for any reason, cease to be Eagle's general manager. In that event, Norwalk agreed to pay Eagle specified amounts in full liquidation of all damages.

Paragraph 14 of the contract presents the principal issue between the parties. That paragraph reads as follows: "In the event that Eagle shall for any reason desire to terminate this agreement, it shall give not less than ninety (90) days' notice of such intention to terminate unless such

notice shall set forth a longer period. Eagle shall in any event complete all orders received by Eagle up to that date which shall be half-way between the date of the sending of said notice and the intended termination date. If Eagle shall liquidate its business, or shall cease to occupy its present plant in Terryville, or if Eagle shall sell its shares of stock to any person, firm, or corporation other than the present holder or holders thereof, or if Eagle shall for any reason, except strike, fire, flood, act of God, or circumstances beyond Eagle's control, cease or be unwilling or unable to manufacture and ship closers as in this agreement provided, then, in any such event, this agreement shall be deemed at the option of Norwalk, breached and terminated by Eagle. If Norwalk shall so elect to treat this agreement as breached and terminated, it shall give ten (10) days' notice in writing to Eagle and, upon the expiration of said ten (10) days, Eagle shall forthwith deliver to Norwalk all of the items and under the terms set forth in paragraph 12 hereof. Eagle shall also pay to Norwalk the sum of $100,000.00, and upon such delivery of items as aforesaid and payment as aforesaid, this agreement and all obligations of the parties hereunder shall cease and determine, except as to obligations or liabilities incurred by either prior to the effective date of termination."

The parties operated under the contract until September 29, 1960, when Eagle notified Norwalk that the agreement would terminate on December 31, 1960, and that it would complete all orders received from Norwalk prior to November 15, 1960. In October, 1960, Eagle sold all its assets to another corporation. On December 16, 1960, Norwalk notified Eagle of its election to treat the notice of

termination as a breach of the contract and demanded the return of all tools and equipment and the payment of $100,000 in accordance with paragraph 14 of the contract.[1] Between October 31 and November 10, 1960, Norwalk sent orders for a total of 11,000 door closers, part of which were filled by Eagle and for which it billed Norwalk $63,574.37. Norwalk has not paid this bill. Eagle returned to Norwalk all items due it on the termination of the contract.

The trial court concluded that paragraph 14 of the contract, calling for payment of $100,000, was not a provision for liquidated damages but was a penalty and consequently was unenforceable. This conclusion is attacked by Norwalk in its appeal. Incidental to this claim is the issue as to pleading and burden of proof.

The complaint did not allege the contract in full or incorporate it by reference. It alleged that paragraph 14 of the contract provided "that in the event Defendant desired to terminate the agreement for any reason, or if Defendant liquidated its business or ceased to occupy its then plant in Terryville, Connecticut, or if Defendant for any reason ceased or was unwilling or unable to manufacture and ship door closers as provided in said agreement, then, in any such event, at the option of Plaintiff, the said agreement could be deemed by Plaintiff as breached and terminated by Defendant, and Defendant would thereupon be required to pay to Plaintiff the sum of $100,000.00." Eagle in its answer admits the existence of a contract "but refers to said contract for a correct statement of the terms thereof." Eagle did not file a special

[1] No issue is made of the timeliness of this notice.

defense. Norwalk claims that Eagle, because it did not plead penalty as a special defense, failed to raise that issue properly at the trial, and that that failure precluded the court from resting a decision on that ground.

It is settled law that a contract provision which imposes a penalty for a breach of the contract is contrary to public policy and is invalid, but a contractual provision which fixes liquidated damages for a breach of the contract is enforceable if it satisfies certain conditions. *Berger* v. *Shanahan,* 142 Conn. 726, 731, 118 A.2d 311, and cases cited. The conditions which will justify an agreement for liquidated damages are: "(1) The damage which was to be expected as a result of a breach of the contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable in the sense that it was not greatly disproportionate to the amount of the damage which, as the parties looked forward, seemed to be the presumable loss which would be sustained by the contractee in the event of a breach of the contract." Id., 732.

Under our rules, illegality not apparent on the face of the pleadings, must be specially pleaded. Practice Book § 120. From the allegation in the complaint, it did not appear that a recovery by Norwalk of $100,000 would necessarily be illegal. Consequently, any facts claimed to establish illegality should have been pleaded as a special defense. *Personal Finance Co.* v. *Lyons,* 128 Conn. 254, 260, 21 A.2d 652; *Davis* v. *Hemming,* 101 Conn. 713, 728, 127 A. 514; see *Pothier* v. *Reid Air Spring Co.,* 103 Conn. 380, 387, 130 A. 383. That procedure was properly followed in the two most recent cases

in which the question of a penalty has been before us. *Berger* v. *Shanahan,* supra (A-337 Rec. & Briefs, back of p. 4); *King Motors, Inc.* v. *Delfino,* 136 Conn. 496, 72 A.2d 233 (A-266 Rec. & Briefs, p. 459). So far as earlier cases such as *May* v. *Young,* 125 Conn. 1, 2 A.2d 385, *Schoolnick* v. *Gold,* 89 Conn. 110, 93 A. 124, *Banta* v. *Stamford Motor Co.,* 89 Conn. 51, 92 A. 665, or *New Britain* v. *New Britain Telephone Co.,* 74 Conn. 326, 50 A. 881, could be said to countenance a contrary procedure, they must be disregarded. The rule in the Practice Book finds substantial support in other jurisdictions.[2]

Inasmuch as Norwalk's claims of law make clear that the issue was actually before the trial court regardless of the formal state of the pleadings, the issue assumes a secondary importance. Under the circumstances of this case, Norwalk stands to gain nothing by the claim that illegality was not affirmatively pleaded because it is unnecessary for us to decide the correctness of the court's conclusion that the contract imposed a penalty for its breach.

The court has found that the corporation which acquired Eagle's assets immediately formed a subsidiary named Eagle Lock Company, which occupies the same premises and employs the same

---

[2] See *Chisholm* v. *Reitler,* 143 Colo. 288, 352 P.2d 794; *Weiss* v. *United States Fidelity & Guaranty Co.,* 300 Ill. 11, 132 N.E. 749; *Korshoj Construction Co.* v. *Mills County, Iowa,* 156 F. Sup. 138 (S.D. Iowa); *Heaberlin* v. *Heaberlin,* 255 Iowa 403, 122 N.W.2d 841; *Silver Dollar Club* v. *Cosgriff Neon Co.,* 80 Nev. 108, 389 P.2d 923; *Judy Bond, Inc.* v. *Kreindler,* 36 Misc. 2d 943, 234 N.Y.2d 375; *Knoblauch* v. *Little Falls Dairy Co.,* 241 App. Div. 910, 272 N.Y.S. 31. For the minority view, see *McCarthy* v. *Tally,* 46 Cal. 2d 577, 297 P.2d 981; *Better Food Markets, Inc.* v. *American District Telegraph Co.,* 40 Cal. 2d 179, 253 P.2d 10. See also General Statutes §§ 42a-1-103, 42a-2-302 and 42a-2-718 (1) for provisions relevant to future litigation under the Uniform Commercial Code.

local management as did Eagle, and that Eagle Lock Company agreed to make door closers for Norwalk and took over the production without loss to Norwalk of either business or time so that Norwalk continued uninterruptedly doing the same business with the same persons at the same location. Consequently, the court concluded that Norwalk had suffered no damage as a result of Eagle's breach of contract. Indeed, the terms of the new contract, as found by the court, would appear to be more favorable to Norwalk than those of the former one.

In *Miller* v. *Macfarlane,* 97 Conn. 299, 302, 116 A. 335, we quoted with approval from *The Colombia,* 197 Fed. 661, 664, that "no provision in a contract for the payment of a fixed sum as damages, whether stipulated for as a penalty or as liquidated damages, will be enforced in a case where the court sees that no damage has been sustained." See also *King Motors, Inc.* v. *Delfino,* supra, 498. This principle finds approval in comment (e) of the Restatement, 1 Contracts § 339, where it is stated that "[i]f the parties honestly but mistakenly suppose that a breach will cause harm that will be incapable or very difficult of accurate estimation, when in fact the breach causes no harm at all or none that is incapable of accurate estimation without difficulty, their advance agreement fixing the amount to be paid as damages for the breach . . . is not enforceable." See also *Priebe & Sons, Inc.* v. *United States,* 332 U.S. 407, 412, 68 S. Ct. 123, 92 L. Ed. 32. This is not to say that any burden is placed on a plaintiff to prove actual damage in order to recover under a valid contract for liquidated damages. The proposition is only that equitable principles will be invoked to deny recovery when the facts make

it apparent that no damage has been suffered.

The principle is based on justice and fairness. "The probable injury that the parties had reason to foresee is a fact that largely determines the question whether they made a genuine pre-estimate of that injury; but the justice and equity of enforcement depend also upon the amount of injury that has actually occurred." 5 Corbin, Contracts § 1063. For a collection of cases on the general subject see the annotation in 34 A.L.R. 1336.

The circumstances which the parties might reasonably foresee at the time of making a contract could, in any given case, be vastly different from the circumstances which actually exist when a court is called upon to enforce the contract. It is not the function of the court to determine by hindsight the reasonableness of the expectation of the parties at the time the contract was made, but it is the function of the court at the time of enforcement to do justice. In the ordinary contract action the court determines the just damages from evidence offered. In a valid contract for liquidated damages, the parties are permitted, in order to avoid the uncertainties and time-consuming effort involved, to estimate in advance the reasonably probable foreseeable damages which would arise in the event of a default. Implicit in the transaction is the premise that the sum agreed upon will be within the fair range of those just damages which would be called for and provable had the parties resorted to proof. Consequently, if the damage envisioned by the parties never occurs, the whole premise for their agreed estimate vanishes, and, even if the contract was to be construed as one for liquidated damages rather than one for a penalty, neither justice nor the intent of the parties is served by enforcement.

To enforce it would amount in reality to the infliction of a penalty. *Massman Construction Co.* v. *City Council*, 147 F.2d 925, 928 (5th Cir.); *Northwest Fixture Co.* v. *Kilbourne & Clark Co.*, 128 Fed. 256, 261 (9th Cir.).

Under the facts of the present case, where the court has found that Norwalk is continuing its business without having been harmed, and substantially as it did before the breach, neither justice nor reason permit it to recover $100,000 in damages. This is so whether the contract provided for liquidated damages or for a penalty.

The court rendered judgment for Norwalk on the complaint for $1.687.19. As already indicated, this represented damages for failure to deliver items ordered between the date of the notice of intention to terminate and the date of the termination of the contract. The finding is completely silent as to the basis on which this figure was determined, and the omission is attacked by Eagle's cross appeal. Consequently, the judgment for Norwalk on the complaint cannot stand.

There is error only in the award of damages to the plaintiff on the complaint and in the amount of damages awarded the defendant on the counterclaim; the judgment is set aside and the case is remanded with direction to render judgment for the defendant on the complaint and for the defendant to recover of the plaintiff $63,574.34 on the counterclaim.

In this opinion the other judges concurred.