[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The present action arises out of a fourteen page "exclusive brokerage agreement" ("agreement") in which the plaintiff agreed to act as a marketing consultant and exclusive sales agent with respect to condominium units which the defendant intended to develop. The matter was referred to an attorney trial referee who issued his report, and thereafter issued an amended report in response to Motions to Correct filed by the parties. The matter is presently before the court with respect to objections filed by both parties to the acceptance of the report of the attorney trial referee.
The only objection to the report filed by the plaintiff relates to the fact that the attorney trial referee granted Paragraphs 6 and 10 of the plaintiff's Motion to Correct the report in which the judgment was sought against three successive general partners. In view of the granting of Paragraphs 6 and 10, judgment should be entered against Colonade One at Old Greenwich Limited Partnership, Old Colonade Limited Partnership, Collins Colonade Limited Partnership and Arthur Collins. Accordingly, with respect to the claims of the plaintiff, the report is accepted as corrected so that the judgment is entered in favor of the plaintiff as against the above named parties.
The defendant has objected to the report on the grounds that certain designated paragraphs were found without evidence and such objections are hereby overruled. The defendant has also objected to the failure to include certain facts on the grounds that they were admitted or undisputed. Such an objection is overruled on the grounds that the facts asserted are not admitted or undisputed under the rule of such cases as Marchitto v. West Haven, 150 Conn. 432,438 (1963).
The defendant also claims, and the attorney trial referee so found, that the agreement between the parties was a real estate brokerage agreement which must comply with the provisions of General Statutes 20-325a(b) which provides, in part, as follows: CT Page 11624
 "(b) No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered after October 1, 1971, as set forth in sub-section (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this sub-section any such contract or authorization shall (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the owner or agent authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in 47-5, and by the real estate broker or his authorized agent.
The provisions of General Statutes 20-325a are mandatory and not permissive. Thornton Real Estate, Inc. v. Lobdell, 184 Conn. 228,230 (1981). The defendant claims that the plaintiff cannot maintain the action because of its failure to comply with the subsection (b)(3) of the statute in that the agreement does not contain the date upon which it was entered into.
The agreement between the parties does not contain a date, indicating the date that it was signed by the respective parties. However, the agreement does contain the statement, "THIS AGREEMENT made and entered as of the 1st day of July 1988, . . .". General Statutes 20-325a(b)(3) requires that the agreement "show the date on which such contract was entered into or such authorization given." (emphasis supplied). In the present case the agreement specifically states and that it was "made and entered as of the first day of July 1988" and therefore does "show the date on which . . . such authorization was given" as required by the statute. Arruda Realty. Inc. v. Doyon, 35 Conn. Sup. 617, 619 (1978) (Sponzo, J.). "In this conclusion, there is no disregard of legislative mandate because the statutory language is being construed in accordance with the commonly approved usage of the language. . . . Moreover, words used in a contract are to be given their ordinary meaning unless there is a suggestion that the parties had a technical or special meaning in mind. . . ." Arruda Realty Inc. v. Doyon, supra, (citations omitted). CT Page 11625
The defendant also claims that the plaintiff cannot maintain the present action because the plaintiff was not in existence on July 1, 1988 and therefore may not maintain the present action because of its failure to be licensed pursuant to the provisions of General Statutes 20-325a(a) which provides:
 No person who is not licensed under the provisions of this chapter, and who is not so licensed at the time he performed the acts or rendered the services for which recovery is sought, shall commence or bring any action in any court in this state, after October 1, 1971, to recover any commission, compensation or other payment in respect of any act done or service rendered by him, the doing or rendering of which is prohibited under the provisions of this chapter except by persons duly licensed under this chapter.
The attorney trial referee has found that Constance Green, who executed the agreement on behalf of the plaintiff as its president, was licensed as a real estate broker since 1987, that the plaintiff was formed as a Connecticut Corporation on August 15, 1988, and that Constance Green transferred her license to the plaintiff in October of 1988 when the agreement between the parties was actually signed. From date of the transfer to the date of the trial, the plaintiff has been a licensed real estate broker. The defendant makes no claim that there was any loss of continuity in the transfer of the license from Constance Green to the plaintiff but asserts that the plaintiff was not in existence on July 1, 1988 and was therefore not licensed within the meaning of the Statute.
General Statutes 20-325a(a) provides, in effect, that an action for brokerage commissions may not be maintained by (1) a person who is not licensed and (2) who was not so licensed at the time the services were performed. In the present case, there is no claim that the plaintiff is not licensed and therefore the defendant's claim must be reviewed as a claim that the second prong of the statute has not been satisfied. The authorization to proceed under the brokerage agreement was effective as of July 1, 1988. However, the services performed by the plaintiff were performed pursuant to a contract executed in October of 1988. While services may have been performed by someone prior to the signing of the agreement, a claim for compensation by the plaintiff, under the agreement, could not have been asserted until the contract was signed. There is no claim asserted by the defendant that the plaintiff was not licensed at the time of the CT Page 11626 agreement was signed or at least contemporaneously therewith. Similarly, there is no claim that there is any loss of continuity in licensing in the transfer of the license from Constance Green to the plaintiff. The court therefore holds that the plaintiff could not have performed services under the agreement until the agreement was executed and, therefore, the plaintiff was licensed at the time the services were performed in compliance with the Statute.
The defendant also claims that the report of the attorney trial referee should not be accepted on the grounds that the report erroneously concludes the defendant is not entitled to receive reimbursement of the excess draws the plaintiff received as against commissions earned. Paragraph 4C of the Brokerage Agreement provides that the plaintiff "shall be entitled to draw as against broker's one (1%) percent sales commissions at the sum of Twelve Thousand Dollars ($12,000) per month ("The Commission Draw")". Provision is then made for the suspension of the commission draw in the event that a designated member of contracts for the purchases of condominium units have not been submitted to the defendant during designated periods.
The report also finds that the plaintiff understood that it would not be entitled to be paid for marketing services and that the draws as against commissions was used by the plaintiff to pay for salaries and benefits for the on site sales staff and that the defendant derived a benefit therefrom. The report further finds that the arrangement was in the nature of a joint venture and that, if sales were generated, both parties would succeed. The report also finds that the agreement was negotiated by both parties, each of whom had an attorney, and that there is nothing in the agreement, either express or implied, indicating that the plaintiff was required to reimburse the defendant for any excess draws over commissions earned.
"Connecticut has adopted the majority rule that, where advances made to a salesman are charged against commissions earned, he is not required to pay any excess of advances over commissions unless it has been expressly or impliedly agreed that he do so." Valoco Building Products Inc. v. Chafee, 4 Conn. Cir. Ct. 322, 323 (1966); Sutton v. Avery, 132 Conn. 397, 399 (1945). Accordingly, under the facts presented, the determination of the attorney trial referee that the defendant is not entitled to reimbursement is not an appropriate basis to reject the acceptance of the report.
The defendant also objects to the report on the grounds that CT Page 11627 the report found that the defendant was responsible for the payment of a termination fee set forth in paragraph 12 B(iii) of the agreement which provides:
 "Other termination: Should Owner decide to terminate the services of Broker without cause, which shall, without limitation, include project delay or hold, Owner shall be liable to pay Broker as follows:
 a. If termination occurs prior to the sale of eighty-four (84) Units, the sum of Fifty Thousand ($50,000.00 Dollars);
 b. If termination occurs subsequent to the sale of eighty four (84) Units, the sum of One Hundred Thousand ($100,000.00) Dollars;
The attorney trial referee found that the plaintiffs' termination was without cause and that the plaintiff was entitled to the $50,000 termination fee. The defendant claims that the termination fee provision is an unenforceable penalty which does not satisfy the test for an enforceable liquidated damages provision as set forth in such cases as Hanson Development Co. v. East Great Plains Shopping Center Inc., 195 Conn. 60, 64-65 (1985) and Norwalk Door Closer Co. v. Eagle Lock and Screw Co., 153 Conn. 681,686 (1966). The rule relied upon by the defendant is stated in the Norwalk Door case, supra at 686, as follows:
 "It is settled law that a contract provision which imposes a penalty for a breach of the contract is contrary to public policy and is invalid, but a contractual provision which fixes liquidated damages for a breach of the contract is enforceable if it satisfies certain conditions. . . . The conditions which will justify an agreement for liquidated damages are: `(1) the damage which was to be expected as a result of the breach of the contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable in the sense that it was not greatly disproportionate to the amount of damage which, as the parties looked forward, seemed to be the presumable loss which would be sustained by the contractee in the event of a breach of the contract. . . .'". (citations omitted). CT Page 11628
The plaintiff asserts that the termination fee is not a liquidated damage provision but merely a fee payable where the defendant wishes to terminate the agreement without cause.
The agreement contains provisions governing the rights of the parties when there is a termination of the agreement for cause which is defined as a material breach of the obligations under the agreement. Thus, if the broker terminates the agreement for cause, the owner has no further liability, except for commission earned, and is entitled to pursue all other remedies allowed by law. On the other hand, if the plaintiff terminates the agreement for cause, "it shall be treated as a termination without cause by the owner as described in subparagraph 12.B(iii)" and the plaintiff would be entitled to receive the payments therein provided. Thus, under the agreement, a termination by the defendant without cause is treated as if the defendant had breached the agreement.
The agreement envisioned the sale of 178 units and the termination fee provisions provide that if more than 84 units are sold, (and therefore more commissions earned) the termination fee is double the fee that would be payable upon the sale of fewer units. The report of the attorney trial referee does not contain findings sufficient to satisfy the conditions for an enforceable liquidated damages provision and therefore, the court concludes that the payment of the termination fee constitutes an unenforceable penalty provision.
The plaintiff also presents a claim for attorney fees pursuant to paragraph 8 A of the agreement which provides:
 "Owner shall indemnify and hold Broker . . . harmless from any claims, lawsuits or actions, at law or in equity, of any kind or nature whatsoever relating to those claims arising directly or indirectly . . . from any breach by Owner of the terms hereof. . . . Said indemnity shall include reasonable counsel fees and costs of suit."
The attorney trial referee has found that the plaintiff is entitled to receive attorney's fees by reason of the breach by the Defendants of the provision to pay a termination fee of $50,000.00. In view of the determination by the court that the termination fee provision is unenforceable, no attorney's fee is recoverable for that item of damage. Aside from the termination fee issue, the referee found that the plaintiff was entitled to recover $1250 as CT Page 11629 salary for a public relations employee plus statutory interest from April 2, 1990 for money wrongfully withheld and the monthly draw payment due in March of 1990 in the amount of $12,000.
It is apparent that, in monetary terms, the bulk of the legal services performed by the plaintiff related to the attempt to recover the termination fee of $50,000 and the successful defense of the defendant's counterclaim assenting a right to repayment of excess draws over commissions in the amount of $103,880.
The attorney trial referee indicated that an evidentiary hearing would be scheduled with respect to the attorney fee issue. However, no such hearing was held and the parties stipulated that the attorney's fees issue would be determined by the court. Accordingly, the court heard argument and received affidavits with respect to the attorney's fees issue. However, the court is unable to determine the issue on the materials presently before the court. Therefore, counsel will be contacted by the clerk to schedule on additional hearing to determine whether the sums found due to the plaintiff are encompassed within the meaning of paragraph 8 A of the agreement and whether an allocation of attorney's fees can be made with respect to any items encompassed by paragraph 8 A.
Final judgment shall not be entered pending a determination by the court of the issues to be addressed at the additional hearing.
Rush, J.