[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case was instituted by the plaintiff, Saturn Construction Company, Inc. (Saturn), to determine the lawful scope of a pending arbitration proceeding between itself and the defendant State of Connecticut (State) concerning claims which have arisen from work it performed as the prime contractor on Phase II of a five-phase construction project to build a new medium-high security State correctional facility for 700 inmates in Newtown, CT Page 10636 Connecticut (Project). Saturn has asked this Court, more particularly, for a declaratory judgment that two of the State's claims for relief in arbitration — both requests to backcharge Saturn for damages the State claims to have incurred because of Saturn's alleged failure to perform all of its work on the Project on schedule — are barred by a liquidated damages clause in the parties' contract.
Facts
Saturn and the State entered into the subject contract on October 24, 1989. The contract consisted of a series of interrelated contract documents, including "th[e] Contract, the invitation for Bids, the enumerated Plans, Specifications and Amendments thereto, the Addenda, the Proposal as accepted by the Commissioner, Department of Public Works, the General Conditions, the Special Conditions, the Bonds, the Notice to Bidders, the Wage Scales, the supplementary General Conditions, and the Insurance Certificates." Contract, ¶ 1.
Under the contract, Saturn agreed that for the sum of $17,650,000.00, it would perform all of the following work on the Project within 470 days of being notified by the State's chief of construction that it could begin work: construction of the foundation for the new facility; erection of all structural framing for the facility; performance of all masonry work on the Project; construction and installation of all security for the building; and completion of the building envelope. It also agreed that if it failed to perform all the work required of it under the contract within the 470-day contract completion period, it would be assessed "[l]iquidated damages, as stated in the proposal form, for each additional day beyond the time agreed for completion of the contract." General Conditions, Article 8, ¶ 1. According to the Proposal Form, liquidated damages would be assessed at the rate of $1000 per calendar day.
The Newtown facility was to be the first of several new correctional institutions which the State would build to ease overcrowding in the State's jails and prisons, and thus to comply with a strict federal court order and a new state statute, General Statutes § 18-87f, regarding overcrowding. Because of this order and statute the State CT Page 10637 was under extreme pressure to construct new jails and prisons in order to avoid making mandatory releases or transfers of inmates simply to keep the total population of each State correctional facility within legal limits. For that reason, the Project was to be built on a Fast Track, with construction to begin almost immediately after contracts were let.
Though the Project was to be built in five separate phases, each by a different prime contractor under his own separate contract with the State,[1] Saturn's contract made it clear that its work on the Project and that of the other prime contractors would proceed simultaneously rather than sequentially. The contract thus obligated Saturn to cooperate fully with all other contractors as they worked together on the Project, and to coordinate its efforts with theirs[2] under the general supervision of the Project construction manager.
In anticipation of possible disputes arising among contractors, the contract further provided that all such disputes should be submitted to the Project construction manager, whose "decision shall be complied with by all Contractors involved." General Conditions, Article 6, ¶ 2. The exercise of this responsibility was consistent with the construction manager's overall responsibility to oversee, inspect and coordinate all work on the Project as the agent of the State. General Conditions, Article 26.
Finally, in the event any dispute among contractors progressed to the point that a claim for damages arose, the contract provided that:
 3. The Contractor shall assume all liability, financial or otherwise, in connection with this contract and shall protect and save harmless the Owner and Construction Manager from any and all damages or claims that may arise because of inconvenience or delay which he may cause other Contractors. If the Contractor experiences a loss because of the presence and operations of other Contractors working adjacent to or CT Page 10638 within the limits of the same project, then as between the Owner and the Contractor, the Contractor shall bear such loss.
General Conditions, Article 6, ¶ 3. (Emphasis added.) This provision obviously assigned ultimate responsibility for all damages or claims for damages arising between contractors working on the Project to the individual contractors who caused those damages. It indicated, however, that different claims for damages might be pursued in different ways.
If the claim was for damage to the person or property of one contractor, allegedly caused by the presence of operations of another contractor at or near the construction site, then under the second sentence of Article 6, paragraph 3 of the General Conditions, such claim was to be presented directly to the offending contractor, who would be solely responsible for paying it. To ensure that each contractor could meet this responsibility before work on the Project began, Article 35, paragraph 1(b) of the General Conditions required each contractor
 to take out and maintain during the life of the contract such public liability and property damage insurance as shall protect him, the State of Connecticut, the Construction Manager, the Architect, and any subcontractor performing work covered by this contract from claims for damages for personal injury, including accidental death, and from claims for property damage which may arise from operations under this contract, whether such operations be by himself or by any subcontractor or by any employee unless such employees are covered by the protection afforded by the Contractor.
If, by contrast, the claim of one contractor against another was for damages suffered as a result of delay or CT Page 10639 inconvenience which the latter had caused the former while working on the Project, then under the first sentence of Article 6, Paragraph 3, the complaining contractor could present his claim directly to the State, which could pay it, if appropriate, with the full expectation that it would later be "protect[ed] and save[d] harmless" by the offending contractor. Id. This procedure, in fact, was implemented by Article 13, paragraph 7 of the General Conditions, which provided as follows:
 7. If the Contractor wishes to make a claim for an increase in the contract sum or for any damages sustained as a result of changes in the work, he shall give the Construction Manager and the Owner written notice thereof within seven (7) calendar days after the occurrence of the event giving rise to such claims. No such claim shall be valid unless the notice is in writing. In addition, the Contractor shall file with the Construction Manager and the Owner daily or weekly itemized statements of the details and cost of such work performed or damage sustained as may be required by the Owner.
For the Newtown facility, the State contracted for a construction manager with Turner Construction Company, Inc. (Turner). According to the terms of its own separate contract with the State, Turner was responsible for coordinating, scheduling and implementing the Project from beginning to end. During construction, its responsibilities included the review, negotiation and recommendation for or against approval of all change orders presented to the State, including claims for damages or increases in the contract sum resulting from inconvenience or delay.
The construction manager's contract provided a schedule of manpower to be supplied by him during each phase of the Project. It also provided that if the Project were delayed through no fault of his own, the State would CT Page 10640 pay him for extended services in an amount equal to the direct salary cost of his personnel employed at the site, multiplied by a factor of 2.3, plus relevant general expenses for the extended time period.
The architect for the Project was Antinozzi Associates, P.C. Its contract with the State similarly prescribed the services it would provide from the initial design phase of the Project through construction. The architect's contract was subject to extension under the same type of formula as the construction manager's contract.
The Claims
In their pending arbitration before the American Arbitration Association, the State seeks to backcharge Saturn for two types of damages it claims to have incurred because of Saturn's alleged failure to perform all of its work on the Project on schedule. In Count Six of its demand for arbitration, the State seeks reimbursement from Saturn for all monies it claims to have paid out to other contractors for extra costs they incurred and/or work they were required to perform on the Project because of Saturn's alleged "failure to maintain its progress schedule." It claims, in particular, that delays caused by Saturn directly impacted the work of the Phase III contractors, who performed all the mechanical, electrical and plumbing work on the Project, and of the Phase IV contractors, who provided all of the architectural finishes, landscaping and paving work on the Project. These contractors, the State claims, were only paid for their extra work after they submitted claims to the construction manager, who reviewed them, negotiated them and recommended that they be paid.
In Count Eleven of its demand for arbitration, the State seeks reimbursement from Saturn for the extra cost of "maintain[ing] the construction manager and architect staff during delays to the Project completion caused by Saturn." The State claims, in this regard, that it was necessary to retain both the construction manager and the architect until the entire Project was completed. On that basis, it argues that Saturn must now bear full responsibility for any extensions of their contracts which were made necessary by Saturn's failure to complete all of the work it CT Page 10641 contracted to perform within the time allowed by the contract.
Saturn here argues that both of the foregoing claims are barred by the liquidated damages clause set forth in Article 8, paragraph 1 of the General Conditions of the subject contract. That clause, it argues, is clear and unambiguous. Without exception or qualification, it provided that liquidated damages were to be assessed for Saturn's delay in completing its work under the contract on schedule. The measure of such damages, which the State itself proposed, was set at $1000 per day for each calendar day beyond the 470-day contract completion period that Saturn's work remained uncompleted. Saturn claims that by including this language in the contract, the State waived any right it might otherwise have had to recover other types of delay damages against Saturn.
The State counters Saturn's arguments by insisting that the liquidated damages clause here at issue was only intended to apply to those losses and expenses which the State would predictably suffer if it could not make immediate use of its new facility on the date originally scheduled for its completion. It supports this contention as follows:
When parties to a contract decide to liquidate their damages, they give up their right to collect actual damages for their underlying losses. However, parties need not liquidate all of their damages. Instead, they may choose to liquidate only some damages, thereby preserving their rights to seek actual damages for the rest of their losses.
In Connecticut, as elsewhere, a liquidated damages clause is only enforceable if and to the extent that it meets the following conditions.
 (1) The damage which was expected as a result of a breach of the contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable in the sense that it was not greatly CT Page 10642 disproportionate to the amount of the damage which, as the parties looked forward, seemed to be the presumable loss which would be sustained by the contractee in the event of a breach of the contract." [Berger v. Shanahan, 142 Conn. 726], 732 [(1955)].
Norwalk Door Closer Co. v. Eagle Lock Screw Co.,153 Conn. 681, 686 (1966). Therefore, when parties to a contract give clear evidence of their intent to liquidate some but not all of the damages they expect to suffer in the event of a breach, it can ordinarily be inferred that the only damages they seek to liquidate are those which will satisfy the foregoing test.
By this logic, the State initially argues that the only damages it here sought to liquidate were loss-of-use damages, because such damages, though substantial, were virtually impossible to estimate or calculate, and thus appropriately recovered as liquidated damages.
Secondly, the State argues that the kinds of damages Saturn now claims to be covered by the liquidated damages clause are not the kinds of damages which are appropriately liquidated, because those damages are both easy to estimate and/or calculate[3] and predictably much greater in total amount than the liquidated sum of $1000 per day.[4] For these reasons, the State argues that it cannot reasonably be thought to have intended that inter-contractor delay damages or contract extension damages for the architect and construction manager would be covered by the liquidated damages clause of this contract.
Finally, and most importantly, the State contends that when the liquidated damages clause is read in the context of the entire contract, it cannot be found to cover delay damages to other contractors because such a reading would directly contradict and render meaningless the "save harmless" clause of Article 6, paragraph 3 of the General Conditions. It claims, in particular, that if the liquidated damages clause were read to cover all delay or inconvenience damages caused by Saturn to other contractors, then Saturn would not be required, as CT Page 10643 Article 6, paragraph 3 requires, to
 assume all liability, financial or otherwise in connection with this contract and . . . [to] protect and save harmless the Owner and Construction Manager from any and all damages or claims that may arise because of inconvenience or delay which he may cause other Contractors[.]
Id. (Emphasis supplied). In that event, instead of recovering "all damages" for any such inconvenience or delay, as Article 6, paragraph 3 unambiguously provides, the State could only recover such damages as might be covered by the total liquidated sum of $1000 per day for each day beyond the contract completion period that Saturn's work remained unfinished. Indeed, if despite its failure to keep to its progress schedule during the bulk of the contract period, Saturn were somehow able to complete its own work on the Project within the 470 days allowed by contract, then under its interpretation of the liquidated damages clause, the State would receive no reimbursement whatsoever for its delay damages despite the clear guarantee to the contrary in Article 6, paragraph 3. This result, claims the State, would be entirely illogical, for it would deprive the State of a right it expressly reserved for itself in another part of the contract.
ANALYSIS
A. Contract Interpretation
When a court interprets a contract, its sole task is to find the mutual intention of the parties who entered into it. If that intention is clearly expressed in the words of the contract, the court must enforce that intention unless to do so would violate public policy.McHugh v. McHugh, 181 Conn. 482, 488 (1980); Baker v.Baker, 187 Conn. 315, 320-21 (1982).
As the court examines contested language in a contract, it must be careful not to treat individual words, phrases or provisions in isolation from one another. CT Page 10644Hatcho Corporation v. Della Pietra, 195 Conn. 18, 22-23
(1985). Instead, the court must treat the entire contract as a single, integrated agreement, whose terms and provisions are to be read together to determine the true intention of those who agreed to them. Mack FinancialCorporation v. Crossley, 209 Conn. 163, 168-69 (1988). With this principle in mind, it is a cardinal rule of contract interpretation that insofar as it is reasonably possible, no word, phrase, clause or provision in a contract is to be treated as if it were meaningless. A.M.Larson Co. v. Lawlor Ins. Agency, Inc., 153 Conn. 618, 621-22
(1966).
If there is ambiguity in the language of a contract, then the court may construe that language in light of the motives of the parties and the purposes they sought to accomplish. Hanson Development Co. v. East Great PlainsShopping Center, Inc., 195 Conn. 60, 65-66 (1985). The court may not, however, read terms into the contract which the parties have not agreed to, either expressly or by necessary implication. Heyman v. CBS, Inc., 178 Conn. 215,227 (1979). Generally speaking, when "the terms of a contract are fairly susceptible of two or more interpretations, the one which is the more equitable, reasonable and rational is to be preferred." Game-A-TronCorporation v. Gordon, 2 Conn. App. 692, 694-95 (1984). In that event, such language "should be construed against the drafter . . . [for the drafter] presumably will be guided by his interest and goals in the transaction." Id.
at 695.
B. Liquidated Damages
The Court agrees with the State that in Connecticut, liquidated damages clauses are enforceable if they meet the three-part test enumerated in Norwalk Door Closer Co. v.Eagle Lock Screw Co., supra. It further agrees, moreover, that although an unrestricted liquidated damages clause operates as a bar to the recovery of all actual or consequential damages for breach of the contract, Camp v.Cohn, 151 Conn. 623, 626 (1964), parties to a contract may choose to narrow the scope of their liquidated damages clause by clearly expressing that intention either in the language of the clause itself or in the remaining language of the contract. Bridgeport v. United States Fidelity CT Page 10645Guaranty Co., 105 Conn. 11, 29 (1926) (narrowly construing a liquidated damages clause in a construction contract to cover only loss-of-use damages suffered by the plaintiff City, and thereby ruling that the City could pursue both liquidated damages and actual or consequential damages for other losses the defendant was claimed to have caused it on the Project).
In interpreting a contested liquidated damages clause, it is plainly essential for the Court to determine the true intention of the parties who included it in the contract. In so doing, as with any other provision of a contested contract, the Court must not merely read the words of the clause in question, but must consider their significance in the context of the entire contract.
When the words of a contested liquidated damages clause, considered in the context of the entire contract, clearly demonstrate the intention of the contracting parties to give a narrow meaning to that clause, the Court must interpret and enforce it accordingly as long as it meets the three-part test of Norwalk Door Closer Co. v.Eagle Lock Screw Co., supra. In the end, whether the clause is read broadly or narrowly can only depend on the words with which it is written, those of the other contractual provisions which surround it, and the shared intention of the parties as evidenced by those provisions.
C. Inter-Contractor Delay Damages/Count Six
Though the liquidated damages clause of the subject contract is simply entitled, "Liquidated Damages," it cannot reasonably be understood to have been adopted by the parties as the only form or measure of damages which the State could recover if Saturn breached the contract. This is so because both the wording of the clause itself and the other provisions of the contract logically require that it be accorded a more limited meaning.
The clause itself, to reiterate, provides that
 1. Liquidated damages, as stated in the proposal form, for each additional day beyond the time agreed for completion of the contract will be assessed against the Contractor. CT Page 10646
General Conditions, Article 8, ¶ 1. So drafted, the clause only called for the liquidation of those damages which the State might incur after the expiration of the 470-day contract completion period, and then only if Saturn failed to complete all of its work under the contract within that period. By the same token, it plainly did not relate to or take account of any damages which the State might incurbefore the expiration of that period, either from Saturn's failure to keep to its progress schedule within that period, or for any other reason.
Thus, by providing that liquidated damages would be assessed "for each additional day beyond the time agreed for completion of the contract [.]" id. (emphasis supplied), the clause definitively established not only themeasure of liquidated damages but the limited reason why such damages would be assessed. Plainly, the only reason
for assessing such damages was the postponement of the contract completion, not the occurrence of any other damages or losses. Accordingly, because each day of postponement thereafter would add directly both to the State's costs and to the public's inconvenience, it was logical and appropriate to assess damages on a daily basis for Saturn's continuing default.
As for delay damages to other contractors which Saturn might cause and the State might pay before the contract completion period expired, such damages were plainly not covered by the liquidated damages clause for the following reasons.
First, such damages could not be found to have resulted from Saturn's failure to complete all of its contracted-for work within the contract completion period. Secondly, the proposed measure of damages under the liquidated damages clause would bear no meaningful relation to the actual amounts of inconvenience or delay damages between contractors. Thirdly, and most importantly, such a reading of the liquidated damages clause would be completely inconsistent with the "save harmless" clause in Article 6, paragraph 3 of the General Conditions.
Article 6, paragraph 3, as the State has convincingly argued, contains an absolute guarantee that Saturn will CT Page 10647 "protect and save [it] harmless" from "any and all damages or claims that may arise because of inconvenience or delay which [Saturn] may cause other Contractors." Id. To "save" someone "harmless" means to "indemnify" him. Black's Law Dictionary, Abridged Fifth Edition, p. 393 (defining "indemnify" as follows: ". . . To save harmless; to secure against loss or damage; to give security for the reimbursement of a person in case of an anticipated loss falling upon him.") In Connecticut, it is well understood that "an indemnity involves a claim for reimbursement in full from one on whom a primary liability is claimed to rest[.]" Kaplan v. Merberg Wrecking Corporation,152 Conn. 405, 412 (1965).
Because the language of Article 6, paragraph 3 requires Saturn to "protect and save harmless" the State for "all damages that may arise because of inconvenience or delay which he may cause other Contractors[.]" id.
(emphasis supplied), it obviously requires Saturn to reimburse it in full, without exception, limitation or reduction, for any such damages which the State reasonably chooses to pay another contractor by approving a proper request for a change order. Since the liquidation of those damages would clearly limit, if not destroy, the State's absolute contractual right to receive such total reimbursement, the liquidated damages clause of the contract cannot reasonably be read to apply to those damages.
In short, the Court concludes that under this contract, inter-contractor delay damages were to be fully paid by Saturn whenever it caused them to occur, and might be recovered by the State from Saturn whenever the State chose to pay them by negotiating a proper change order. Because the parties agreed to this arrangement, they obviously did not intend that the recovery of such damages should be restricted by the liquidated damages clause. Therefore, the Court agrees with the State that since the damages sought by the State in Count Six of its demand for arbitration are not covered by the liquidated damages clause of the contract, the plaintiff's first request for a declaratory judgment, barring the arbitration of that claim, must be denied.
D. Damages for Contract Extensions/Count Eleven
CT Page 10648
A more difficult question arises as to the applicability of the liquidated damages clause of Article 8, paragraph 1 of the General Conditions to the contract extension costs for which the State seeks reimbursement in Count Eleven of its demand for arbitration. This is so for several reasons.
First, it must be observed that damages of this type clearly fall within the substantive description of damages to be liquidated in the liquidated damages clause itself. That is, the costs incurred by the State to obtain extensions of the architect's and construction manager's contracts are costs which would not have been incurred by the State if Saturn had completed all of its work under the contract within the contract completion period. Indeed, it was the expiration of that period itself without completion of Saturn's work which directly necessitated the additional expenditures. Therefore, the mounting costs of such payments were clearly ". . . damages . . . for each additional day beyond the time agreed for completion of the contract," within the meaning of the liquidated damages clause itself. General Conditions, Article 8, ¶ 1.
Secondly, there is nothing in the liquidated damages clause itself or in any other part of the contract to give the clause a narrower meaning of any kind, or otherwise to exclude such contract extension damages therefrom. Unlike inter-contractor delay damages, which Article 6, paragraph 3 removed from the scope of the liquidated damages clause by expressly requiring Saturn to reimburse the State in full for them, contract extension damages have not been made the subject of such a mandatory reimbursement clause. Surely, if the parties had so intended, they could easily have included such language in the text of Article 6, paragraph 3 itself. However, they did not, so damages of that kind are not thereby exempted from the liquidated damages clause.
Thirdly, of course, there is a presumption that when one party to a contract is its drafter, contested language in the contract should be construed against him if the need for construction arises. Here, however, though it is the State which drafted the contract, the Court finds no basis for invoking this presumption because the contract language CT Page 10649 is not ambiguous.
The State has argued forcefully that under the circumstances here presented, it should not be found to have intended that contract extensions for the architect and the construction manager would be covered by the liquidated damages clause of the contract because the daily costs predictably associated with such contract extensions were readily estimable in advance of entering the contract and substantially greater than the liquidated sum of $1000 per day. The Court must be mindful, however, that extrinsic evidence cannot be considered on a question of contract interpretation unless the contract itself is ambiguous. That is, the contract documents themselves must initially suggest to the Court that there is at least some rational basis for arriving at two or more reasonable interpretations of the contract provision in question before extrinsic evidence may be considered.
Here the State has argued that the only damages sought to be liquidated by the parties were for loss of use of the new facility. Citing the Bridgeport case, supra, as support, it has urged the Court to find that since loss-of-use damages are difficult to calculate and expected contract extension damages are larger than $1000 per day, it would be appropriate to read the liquidated damages clause as relating solely to loss of use.
There are several problems with this analysis. First, in Bridgeport, the Court learned from the contract documents themselves that the parties contemplated very substantial third party damages claims in the event of a delay in completing the bridge. Because the bonds to cover such losses were very large compared to the liquidated sum of $50.00 per day, the Court could fairly conclude that the former were not intended to be covered by the latter.
Here, by contrast, the State, over objection, sought to show the true measure of contract extension damages by introducing evidence outside the contract documents themselves. The Court, to reiterate, cannot rely on extrinsic evidence to create ambiguity where the documents in question do not give rise to it.
Secondly, even if such outside evidence should be CT Page 10650 considered, it is not clear to the Court that responsibility for delay in the completion of the contract completion period can be so easily assessed and precisely calculated. To be sure, the construction manager's and the architect's contracts contain extension clauses which permit an easy calculation of all total additional expenses beyond 470 days. However, if an extension were to occur because more than one contractor had failed to complete his work on time, apportioning responsibility among them might be a difficult task. This task, of course, could be avoided simply by agreeing to liquidate the resulting damages, as the parties here appear to have done.
Thirdly, because this was a phased Project, with multiple contractors working on it simultaneously, it is highly probable that at least one of the later phase contractors would continue to work on the Project after Saturn finished all the required work on its own phase of the Project. Therefore, it cannot be found that any delay by Saturn would immediately or necessarily result in a loss of use of the facility, for its opening date would have depended not only on Saturn's completion of its work, but on the completion of all other phases of the Project as well.
In conclusion, the Court finds that there is no basis in the contract to support the inference that the parties intended only to liquidate damages for loss of use of the new Newtown correctional facility. To the contrary, the actual damages herein sought by the State clearly fall within the narrow scope of the liquidated damages clause, for they are damages "for each additional day beyond the time agreed for completion of the contract[.]" General Conditions, Article 8, ¶ 1.
Even if the State's own representatives struck a poor bargain for the State by underestimating the damages the State might suffer if Saturn failed to perform all of its work under the contract on time, it must now accept the consequences of that bargain, for it freely agreed to them. Because, under the terms of that bargain, the State agreed to accept liquidated damages in the amount of $1000 per day for each day beyond the contract completion period that Saturn's work remained unfinished, it must now accept that sum in lieu of any special damages it may actually have CT Page 10651 incurred to hire the Project architect and construction manager for such additional time. For all of these reasons, the Court concludes that the State is barred from seeking such contract extension damages under Count Eleven of its demand for arbitration.
Michael R. Sheldon, Judge