******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

OLD COLONY CONSTRUCTION, LLC *v.* TOWN
OF SOUTHINGTON
(SC 19346)

Palmer, Eveleigh, McDonald, Robinson and Prescott, Js.

*Argued December 10, 2014—officially released April 21, 2015*

*Jared Cohane*, with whom were *Peter J. Martin* and *Luke R. Conrad*, and, on the brief, *Timothy T. Corey*, for the appellant (plaintiff).

*Linda L. Morkan*, with whom were *Dennis C. Cavanaugh*, and, on the brief, *Ryan M. Burns*, for the appellee (defendant).

*Wendy Kennedy Venoit* and *Peter J. Zarella* filed a brief for the Connecticut Associated Builders and Contractors, Inc., as amicus curiae.

*Opinion*

McDONALD, J. This appeal principally concerns a municipality's ability to recover liquidated damages for a contractor's failure to timely complete a public works contract if the municipality has elected to terminate the contract for convenience[1] or has contributed to some portion of the delay. The plaintiff, Old Colony Construction, LLC (Old Colony), appeals from the judgment of the trial court awarding the defendant, the town of Southington (town), liquidated damages on its counterclaim and permitting the set off of those damages against the damages awarded to Old Colony for the town's failure to pay sums due under the contract's termination for convenience provision. Old Colony contends that the town is barred from collecting liquidated damages because: (1) termination for convenience precludes any default based remedies available for termination for cause, including liquidated damages; and (2) the town's contribution to the delay rendered the liquidated damages provision unenforceable under *Hartford Electric Applicators of Thermalux, Inc.* v. *Alden*, 169 Conn. 177, 184, 363 A.2d 135 (1975). Old Colony further contends that, in light of change orders approved by the town acknowledging Old Colony's entitlement to additional time for certain delays, it is entitled to an equitable adjustment in the contract. The trial court rejected these claims in light of a reservation of the town's rights and remedies in the termination for convenience provision and contractual mechanisms for obtaining extensions of time for delays beyond Old Colony's control, with which Old Colony had failed to strictly comply. We affirm the trial court's judgment.

The record reveals the following summary of the underlying facts, as found by the trial court or as reflected in the express terms of the parties' contract. In early 2004, the town sought bids on a construction project known as the Pond View Drive Pump Station Replacement. The project required the demolition of an existing sewer pump station and the construction of a wet well, a pumping station, and an above grade garage. The town received eleven bids on the project, ranging from $912,500 to $1,665,000. By letter dated February 24, 2004, the town awarded the contract to Old Colony for $912,500. Included in the contract documents was a document entitled "Standard General Conditions of the Construction Contract" (general conditions), which included, inter alia, provisions concerning the contractor's responsibilities, execution of change orders, and suspension of work and termination. In executing the contract, Old Colony attested that it had examined the work site to ascertain any conditions that could affect performance and had undertaken any supplemental examination or testing necessary to meet the contract's terms and conditions.

Under the express terms of the contract, time was

of the essence. The effective date of the contract was April 22, 2004. Substantial completion of the contract was due by January 17, 2005. The contract authorized liquidated damages in the amount of $400 for each day that substantial completion exceeded that date. The contract also provided mechanisms for Old Colony to seek extensions of time and increases in the contract price for delays beyond its control. Such extensions of time could be made only by way of change orders or amendments to the contract, but, unless the parties had agreed to the adjustment, Old Colony was required to file written notice of a claim to the project engineer— the town engineering department—within a specific period and with supporting documentation to obtain the adjustment.

From the outset, the project was plagued with delays. Part of the delay stemmed from Old Colony's misunderstanding as to when the contract time commenced. Old Colony's first written submittals were more than three months late. Over the course of the project, the project engineer repeatedly brought to Old Colony's attention the provisions pertaining to contract times, liquidated damages, and the extension of the construction period under specific conditions. In a letter dated November 16, 2004, in response to Old Colony's complaint that the town had delayed responding to certain submittals and providing certain materials, the town agreed as a compromise to extend the substantial completion date to June 14, 2005. The letter advised: "[A]ny delay beyond June 14, 2005 will be assessed liquidated damages at $400 per day." Following a May 16, 2005 meeting, the project engineer reiterated this position, advising by letter that "[o]nly the [t]own [c]ouncil can waive or reduce liquidated damages and only at [the] completion of the project."

After the substantial completion date was extended to June 14, 2005, several other problems arose that impacted the schedule. For example, Old Colony discovered that contract construction documents did not correctly reflect the location of underground electrical lines and the elevation of the force main for the sewer lines. Old Colony also discovered a caisson for the old pump station in the excavation site that had to be removed, which the town agreed was an unforeseen condition. In each of these instances, the project engineer signed off on change orders drafted by Old Colony to address certain costs arising from these circumstances, which, in describing the change, noted that the impact to the schedule had not been determined and that additional time would be incorporated into the schedule. When the town, however, rejected as unnecessary Old Colony's new proposal for a temporary bypass system in lieu of a previously accepted proposal, it advised Old Colony by letter that it was not agreeing to any substantial change in the original contract as to time or costs. The letter also reiterated the applicability

of the liquidated damages clause and the town's reservation of right to assess such damages.

On more than one occasion during this process, the town initiated steps to terminate the contract for cause, but on each occasion agreed to continue the project after meeting with Old Colony. Ultimately, however, after disagreements and further delays relating to the dewatering process, the town notified Old Colony by way of a letter dated August 14, 2007, of the town's election to terminate the contract on the basis of convenience under paragraph 15.03 of the general conditions of the contract. Shortly thereafter, Old Colony submitted payment application 15 in the amount of $86,765.64. Old Colony previously had been paid a total of $650,220.74 pursuant to payment applications 1 through 14. In further communications in September and October, 2007, the town acknowledged receipt of payment application 15 and its obligation to pay Old Colony for expenses, claims, and completed work on the project but requested a complete accounting of costs to settle payment.

On January 16, 2009, Old Colony submitted payment application 15R seeking $1,352,405.89 in unpaid costs, or, in the alternative, a request for an equitable adjustment in the contract price in the amount of $951,245.43, based primarily on delay related costs. After the town rejected the payment requests, Old Colony submitted a claim to the project engineer, as required under the contract. That claim effectively was denied after the project engineer failed to issue a written decision on the merits within thirty days after the claim submission.

In July, 2009, Old Colony commenced the present breach of contract action.[2] The town asserted a special defense claiming that Old Colony had not satisfied the conditions precedent to recovery, including proper, timely notice of its claims. The town also requested a setoff for a counterclaim seeking liquidated damages for breach of contract.[3] In response, Old Colony filed a motion for summary judgment, contending that the counterclaim was barred as a matter of law by virtue of the town's election to terminate the contract for convenience, not for cause.

The trial court, *Young, J.*, denied Old Colony's motion for summary judgment. The court framed the issue as "whether the town's election to terminate the contract pursuant to [paragraph] 15.03 of the general conditions of the contract absolved Old Colony of any further obligation for prior alleged default or liquidated damages, which could have been asserted if the contract was terminated for cause." In answering that question in the negative, the court cited language in paragraph 15.03 reserving to the town other rights and remedies.

Following a bench trial, the trial court, *Hon. Lois Tanzer*, judge trial referee, rendered judgment in favor

of Old Colony on its breach of contract claim and in favor of the town on its liquidated damages counterclaim. With respect to Old Colony's claim, there was no real dispute as to whether Old Colony had a right to recover for sums due under the termination for convenience provision, but rather as to the amount due thereunder. That provision distinguishes between payment for completed work, payment for expenses for uncompleted work, and payment for expenses sustained in connection with termination. The court concluded that Old Colony was due a total of $164,440.64: $86,765.64 for completed work set forth in payment application 15; $45,000 in expenses for incomplete work related to the dewatering plan; and $32,675 in expenses directly attributable to termination for materials that the town had required Old Colony to leave on the site posttermination.

Having resolved the issue of damages due under the termination for convenience provision, the court considered Old Colony's claim for an equitable adjustment in the contract price due to project delays. The court agreed with the town that no such adjustment could be afforded in light of Old Colony's failure to comply with the strict contractual notice preconditions for obtaining adjustments for delays. The court rejected Old Colony's position that the notice requirements had been satisfied by letters accompanying some of its applications for payment indicating that the requests therein were not inclusive of all costs or work completed to date, that the project had been impacted by circumstances beyond Old Colony's control, and that, as a result, additional time and efforts would be required to complete the project. The court also disagreed with Old Colony's position that the town's approval of the change orders was persuasive evidence that the parties had agreed to modify the contract to dispense with contractual requirements for changes in time, cost, or notice of the details of delay claims. The court concluded: "In sum, [Old Colony] is not entitled to recover payment for its claimed delay expenses because [paragraph] 15.03 [Termination for Convenience] of the [c]ontract does not authorize such payment, because [Old Colony] did not comply with the notice provisions of the contract for delay claims and changes in [c]ontract price and time, and because there is no equitable basis such as bad faith or contract modification to invoke such a claim."

The court next turned to the town's counterclaim for liquidated damages and a setoff. The town sought $400 per day for 789 days of delay between June 14, 2005, the revised substantial completion date, and August 14, 2007, the termination for convenience date. As there was express contractual language providing for such damages, the court considered in turn, but ultimately rejected, each of Old Colony's special defenses as to why such relief was legally unavailable. The court first concluded that the argument that this relief was pre-

cluded by the town's election to terminate for convenience had been rejected in the prior decision by Judge Young denying Old Colony's motion for summary judgment, noting that Old Colony had not provided the court with any basis to rule contrary to that decision. The court next rejected Old Colony's reliance on *Hartford Electric Applicators of Thermalux, Inc.* v. *Alden*, supra, 169 Conn. 184, for the proposition that the liquidated damages provision had been abrogated because the town had caused or contributed to some of the delays. The court reasoned that the New York case on which *Alden* had relied for this general rule acknowledged that abrogation would not apply if the contract contained a mechanism to reset the date from which liquidated damages would run if the delay was not caused by the contractor. See *Mosler Safe Co.* v. *Maiden Lane Safe Deposit Co.*, 199 N.Y. 479, 486–87, 93 N.E. 81 (1910). The liquidated damages provision in the present case provided such mechanisms, but Old Colony had not followed the procedures required by the contract, and the town had not granted extensions beyond June 14, 2005. As such, the court concluded that Old Colony should not be permitted to avoid liquidated damages without strict compliance with the delay provisions. Finally, the court rejected Old Colony's defenses that the town had waived, or was estopped from asserting, a claim for liquidated damages by virtue of the change orders acknowledging that additional time would be warranted. The court concluded that the town's conduct may have been an acknowledgment of Old Colony's right to seek additional compensation but did not express the town's intention to waive the town's right to liquidated damages for delay or dispense with Old Colony's obligations to comply with procedures for delay claims.

Ultimately, the court concluded that the town was entitled to $315,000 in liquidated damages on its counterclaim. The court granted the town's request to set off the $164,440.64 in damages it owed Old Colony for terminating the contract for convenience, and rendered judgment in favor of the town in the amount of $150,559.36. This appeal followed.[4]

I

We begin with Old Colony's claims in support of its contention that the town is not entitled to liquidated damages.

A

Old Colony first claims that default based remedies, including liquidated damages, are not available if a property owner elects to terminate a construction contract for convenience, or "without cause." Old Colony contends that, because a property owner terminating a contract for convenience avoids liability for the other party's expectation damages as well as the risks atten-

dant to proving a proper termination for cause, the consideration supporting that unilateral right is the loss of default based remedies available for termination for cause. We conclude that, irrespective of the merits of Old Colony's position as an abstract proposition, the present case is governed by the express terms of the parties' contract, under which the town may recover liquidated damages.

It is well settled that, "[w]hen construing a contract, we seek to determine the intent of the parties from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact. . . . When the language is clear and unambiguous, however, the contract must be given effect according to its terms, and the determination of the parties' intent is a question of law." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Isham* v. *Isham*, 292 Conn. 170, 180–81, 972 A.2d 228 (2009). Old Colony concedes that this issue is a question of law to be resolved by resort to the contract terms.

Article 3 of the parties' contract addresses "Contract Times." Paragraph 3.1 sets forth the period by which substantial completion of the project is due. Paragraph 3.2, entitled "Liquidated Damages," provides in relevant part: "[The town] and [Old Colony] recognize that time is of the essence of this [a]greement and that [the town] will suffer financial loss if the [w]ork is not completed within the times specified in paragraph 3.1 . . . plus any extensions [of time] thereof allowed in accordance with [a]rticle 12 of the [g]eneral [c]onditions. They also recognize the delays, expense, and difficulties involved in proving the actual loss suffered by [the town] if the [w]ork is not completed on time. Accordingly, instead of requiring any such proof, [the town] and [Old Colony] agree that as liquidated damages for delay (but not as a penalty) [Old Colony] shall pay [the town $400] for each day that expires after the time specified in paragraph 3.1 for [s]ubstantial [c]ompletion until the [w]ork is substantially complete. . . ."

Article 15 of the general conditions of the contract addresses "Suspension of Work and Termination." Paragraph 15.02 provides for termination for cause, setting forth the events that constitute such cause and the town's right to recover from Old Colony should the town's damages and costs for completing the project exceed the unpaid balance of the contract price. Paragraph 15.03 provides for termination for convenience,

providing in relevant part: "Upon seven days written notice to [Old Colony] and [the project engineer], [the town] may, *without cause and without prejudice to any other right or remedy of* [*the town*], elect to terminate the [c]ontract. . . ." (Emphasis added.) This paragraph then prescribes Old Colony's right to be paid for: (1) completed, acceptable work, including reasonable sums for overhead and profit on such work; (2) expenses sustained prior to the effective date of termination in connection with uncompleted work, including reasonable sums for overhead and profit on such expenses; (3) losses incurred in settlement of terminated contracts with subcontractors, suppliers, and others; and (4) reasonable expenses directly attributable to termination.

We begin with the observation that the reservation of "*any* other right or remedy" appears exceedingly broad. (Emphasis added.) Had the parties intended to limit the town to nondefault remedies, as Old Colony suggests,[5] one would expect some sort of limiting language rather than such expansive terms. Cf. *Litton Industries Credit Corp.* v. *Catanuto*, 175 Conn. 69, 70–71, 394 A.2d 191 (1978) (agreement providing that, in event of default, lessor shall have right to exercise " 'any one or more of the following remedies' " but then providing that " '[t]he remedies provided under [B] and [C] may be exercised only in the alternative' "). When a contract expressly preserves remedies following termination, such a reservation must be given full effect absent evidence of a more limited intent. See *Armour & Co.* v. *Nard*, 463 F.2d 8, 10 (8th Cir. 1972) (rejecting contractor's argument that owner was barred from seeking damages for delay after exercising right to terminate "without cause" in light of contractual provision stating that " 'failure by [the owner] to exercise any right under the [c]ontract [d]ocuments shall not constitute a waiver of that or any other right or subsequent right hereunder' ");[6] *EPC Corp.* v. *Travelers Casualty & Surety Co. of America*, 423 F. Supp. 2d 1016, 1026 (D. Ariz. 2006) (concluding that court must give effect both to termination for convenience clause providing for payment of subcontractor for work actually performed in amount proportionate to sum payable under agreement and to provision allowing contractor to offset any sums due subcontractor by amount of any "backcharges" for defective work, absent evidence that parties intended provisions to have meaning other than what is contained in contract itself).

In the absence of any express limitation on the reservation of rights in the termination for convenience clause, we consider whether any limitation is implied by other provisions in the contract. See, e.g., *Plainfield* v. *Paden Engineering Co.*, 943 N.E.2d 904, 913 (Ind. App. 2011) (termination-on-certificate clause providing that termination procedure therein prescribed is "without prejudice to any other rights or remedies of the

[o]wner" preserves owner's common-law rights to extent that exercise of those rights is not in conflict with duties specified in contract). The only potential limitation on the termination for convenience provision that may be gleaned is one yielded by a comparison to the provision setting forth a reservation of rights when terminating for cause. That provision, paragraph 15.02 (C) of the general conditions, provides in relevant part that "termination [for cause] will not affect any rights or remedies of [the town] against [Old Colony] then existing or which may thereafter accrue. . . ." The absence of similar temporal language in the termination for convenience provision arguably could imply that rights and remedies cannot accrue after termination. Cf. *Armour & Co.* v. *Nard*, supra, 463 F.2d 11 ("generally, the exercise of a power of termination will have prospective operation only; discharging both parties from their contractual duty to perform promises that are still wholly executory, but not discharging liability for breaches that have already occurred"). Even if we were to assume, however, that such a limitation exists following a termination for convenience, the town's claim for liquidated damages in the present case would not be impaired because its right to such damages arose as soon as the substantial completion date passed and continued to accrue until termination of the contract.

The case law on which Old Colony relies for the proposition that all default based remedies are unavailable if an owner terminates for convenience, neither stands for such a sweeping proposition nor is applicable under the facts of the present case. None of the cases involved a liquidated damages provision. Only one of the cases involved a similar reservation of rights and remedies in the termination for convenience provision itself. See *Shelter Products, Inc.* v. *Steelwood Construction, Inc.*, 257 Or. App. 382, 385, 307 P.3d 449 (2013) (citing clause providing that " '[t]he [c]ontractor may, upon seven . . . days written notice to the [s]ubcontractor, without cause and without prejudice to any other right or remedy, terminate this [s]ubcontract, in whole or in part, for its convenience' "). In that case, the court recognized the significance of this reservation and limited its holding to the particular circumstances of the case. See id., 399 ("we agree with the trial court that . . . the text of the termination for convenience clause, *in context*, does not *under the circumstances of this case* permit [the contractor] to both terminate [the subcontractor] without cause and subsequently proceed against [the subcontractor] as if it had terminated the agreement for cause" [emphasis added]). The contractor in *Shelter Products, Inc.* had sought damages for curing a subcontractor's defective work after it had terminated the subcontract for convenience. In rejecting that claim, the court emphasized the fact that, had the subcontractor been terminated for cause, the contractor would have been required to provide the

subcontractor with notice and an opportunity to cure the defective work. See id., 400 (noting no "generally applicable legal rule or provision of the contract that . . . would permit [the contractor] to both terminate without cause, fail to provide an opportunity to cure, and, at the same time, proceed against [the subcontractor] as if it had terminated the agreement for cause and given an opportunity to cure"); id., 402 ("at least in the absence of an opportunity to correct allegedly defective work . . . where a party has terminated a contract for convenience, that party may not then counterclaim for the cost of curing any alleged default"). Indeed, all of the cases relied on by Old Colony share this general concern about a party seeking to recover the costs of curing defective or incomplete work after terminating for convenience,[7] a matter on which the law is not fully settled. See *TRG Construction, Inc.* v. *Water & Sewer Authority*, 70 A.3d 1164, 1168 (D.C. 2013) ("[w]e recognize that the Federal Circuit, in [*Lisbon Contractors, Inc.* v. *United States*, 828 F.2d 759, 769 (Fed. Cir. 1987)], specifically refused to rule on the question of whether the government may deduct the cost of replacing defective work from a termination for convenience recovery").

In the present case, the town's pursuit of liquidated damages does not deprive Old Colony of any rights that it would have been afforded had it been terminated for cause. Similarly, it does not expose Old Colony to the costs of completing the project, as would be the case had it been terminated for cause. We disagree, therefore, with Old Colony that permitting liquidated damages in the present case renders the distinction between terminating for convenience and for cause illusory. Accordingly, we conclude that the trial court properly determined that, in light of the express terms of the parties' contract, the town's election to terminate the contract for convenience did not preclude it from recovering liquidated damages.[8]

### B

We next turn to the question of whether, in light of findings by the trial court indicating that certain misinformation by the town had contributed to some of the delay, the liquidated damages clause was unenforceable as a matter of law under *Hartford Electric Applicators of Thermalux, Inc.* v. *Alden*, supra, 169 Conn. 177. In *Alden*, this court stated: "The majority of jurisdictions in this country hold that where there are delays attributable to both parties, as in the present case, the liquidated damages clause based upon the contract date is entirely abrogated; the contract is to be performed within a reasonable time. . . . In a leading case, *Mosler Safe Co.* v. *Maiden Lane Safe Deposit Co.*, [supra, 199 N.Y. 486], the court explained . . . 'While such an agreement has not the harshness of a penalty, it is, nevertheless, in its nature, such that its

enforcement, where the party claiming the right to enforce has, in part, been the cause of delay, would be unjust. It is a reasonable view of the situation that denies, in such a case, the right to strict enforcement and, where both parties are at fault with respect to the delay, remits the injured party to the remedy of an action at law; in which he can recover his actual loss from the contractor's failure to complete within what was a reasonable time.' Thus, the party injured by the delay 'must be content to recover such damages as it is able to prove were actually suffered.'" (Citations omitted.) *Hartford Electric Applicators of Thermalux, Inc.* v. *Alden*, supra, 184–85.

In the case on which *Alden* relied, however, the New York court had acknowledged that the parties could by contract avoid abrogation: "It was competent for the parties, anticipating mutations of mind and of conditions, to have provided against a forfeiture of the right to liquidated damages by, further, agreeing that the architect was empowered to certify an extension of the time for completion, if the contractor was delayed in his work in certain specified events, or by causes specified. With such a provision, the obligation to pay liquidated damages might be preserved and its commencement deferred to a substituted date." *Mosler Safe Co.* v. *Maiden Lane Safe Deposit Co.*, supra, 199 N.Y. 486–87. *Alden* did not address this aspect of the decision in *Mosler Safe Co.*

We note that the modern trend has been for jurisdictions to abandon the strict abrogation rule in favor of one that apportions liquidated damages between at fault parties. D. Rosengren, 13 Connecticut Practice Series: Construction Law (2005) § 1:8, p. 11 and n.9. In the present case, however, we need not consider whether the default rule set forth in *Alden* should be abandoned. We agree with the town that the trial court was not bound to blindly follow the holding in *Alden* without considering whether it applies in different circumstances than those implicated in that case, namely, when the liquidated damages clause provides a mechanism to reduce damages for delays not attributable to the contractor. Although the court in *Alden* relied on *Mosler Safe Co.* without addressing the court's recognition in that case of the parties' ability to craft a liquidated damages provision that could be enforced despite delay on the part of the property owner, we are not persuaded that *Alden* implicitly rejected such a limitation on its general rule. We further agree with the trial court that the exception to the abrogation rule in *Mosler Safe Co.* should govern the present circumstances. Accordingly, because the liquidated damages provision in the present case satisfied this exception, abrogation under *Alden* is inapplicable.

C

Finally, we briefly address Old Colony's claim that

the town could not prevail on its claim for liquidated damages in the absence of a specific finding, or proof, of actual loss. As support for this contention, Old Colony relies on *Hartford Electric Applicators of Thermalux, Inc.* v. *Alden,* supra, 169 Conn. 177, and *Norwalk Door Closer Co.* v. *Eagle Lock & Screw Co.*, 153 Conn. 681, 689–90, 220 A.2d 263 (1966). We disagree.

For the reasons discussed in part I B of this opinion, *Alden* is inapplicable. We also are not persuaded that *Norwalk Door Closer Co.* v. *Eagle Lock & Screw Co.*, supra, 153 Conn. 681, supports Old Colony's position. In that case, the court noted that it previously had approved the general proposition that "no provision in a contract for the payment of a fixed sum as damages, whether stipulated for as a penalty or as liquidated damages, will be enforced in a case where the court sees that no damage has been sustained." (Internal quotation marks omitted.) Id., 688. Notably, the court went on to state: "This is not to say that any burden is placed on a plaintiff to prove actual damage in order to recover under a valid contract for liquidated damages. The proposition is only that equitable principles will be invoked to deny recovery when the facts make it apparent that no damage has been suffered." Id., 688–89. In that case, the trial court had made a specific determination that the party seeking liquidated damages suffered no damage as a result of the opposing party's breach of contract. Id., 688.

In the present case, there is no such finding in the record. Nor is it apparent from the facts found that the town suffered no damages. Moreover, we note that requiring proof of actual damages is in direct tension with the rationale for permitting liquidated damages. Cf. *Hanson Development Co.* v. *East Great Plains Shopping Center, Inc.*, 195 Conn. 60, 64–65, 485 A.2d 1296 (1985) (noting three conditions for recovering liquidated damages, including that "the damage which was to be expected as a result of a breach of a contract was uncertain in amount or difficult to prove," and concluding that party may not recover both liquidated damages and actual damages). Therefore, this argument also fails.

## II

Having concluded that the trial court properly awarded liquidated damages, we turn to Old Colony's claim that the trial court improperly denied its request for an equitable adjustment in the contract. Specifically, Old Colony contends that the court improperly relied on Old Colony's failure to strictly comply with the notice and claim requirements for obtaining adjustments due to delay when rejecting its claim. Old Colony contends that such compliance was unnecessary in light of the change orders, which "modified the contract and acknowledged that time extensions were due [Old Colony]." We disagree with the import that Old Colony

ascribes to the change orders.

"The term equitable adjustment is a legal term of art" and it signifies a principle designed "to keep a contractor whole when the [g]overnment modifies a contract." (Internal quotation marks omitted.) *M.J. Paquet, Inc.* v. *Dept. of Transportation*, 171 N.J. 378, 392, 794 A.2d 141 (2002); see also *Southern Seeding Service, Inc.* v. *W.C. English, Inc.*, 735 S.E.2d 829, 833 (N.C. App. 2012) (citing treatise that "defines 'equitable adjustment' as 'the difference between the cost of the work required by the contract and the cost of the changed work, plus profit, whether or not the fair market value is the same' "). " 'Equitable adjustment' can be defined by the parties to a contract. Normally, standard form contracts or government contracts allocate the risks of an equitable adjustment to the parties by providing an accounting methodology by which the parties can calculate the amount of any adjustment." *Southern Seeding Service, Inc.* v. *W.C. English, Inc.*, supra, 832–33; see also *Washington Metropolitan Area Transit Authority* v. *Nello L. Teer Co.*, 618 A.2d 128, 131 (D.C. 1992) (when contract makes provision for equitable adjustment of particular claims, nature and scope of relief are controlled by contract itself). When the contract, or other governing law, sets forth conditions under which an equitable adjustment may be obtained, the failure to strictly satisfy those conditions will preclude relief. See *Sutton Corp.* v. *Metropolitan District Commission*, 423 Mass. 200, 207, 667 N.E.2d 838 (1996); see, e.g., *Skopek Bros., Inc.* v. *Housing Authority*, 11 Mass. App. 947, 416 N.E.2d 1006 (1981) (contractor was not entitled to equitable adjustment in contract price by reason of contractor's encountering conditions materially different from those anticipated because contractor failed to meet statutory requirements of submitting written request for adjustment as soon as possible after such conditions are discovered); *J & H Reinforcing & Structural Erectors, Inc.* v. *Ohio School Facilities Commission*, Docket No. 12AP-588, 2013 WL 4779008, *17 (Ohio App. September 5, 2013) (failure to provide timely written request for extension of time as required under contract precluded claim for equitable adjustment, even if opposing party had actual notice of conditions necessitating extension); see also *CAS Construction Co.* v. *East Hartford*, 82 Conn. App. 543, 550, 845 A.2d 466 (2004) (failure to file timely written request for contract adjustment precluded plaintiff's claim for remobilization costs). A party may, however, by subsequent, unequivocal conduct waive conditions precedent to an equitable adjustment, such as timely written notice. See *Glynn* v. *Gloucester*, 9 Mass. App. 454, 462, 401 N.E.2d 886 (1980); *Tupelo Redevelopment Agency* v. *Gray Corp.*, 972 So. 2d 495, 507 (Miss. 2007); *Niagara Frontier Transportation Authority* v. *Computer Sciences Corp.*, 209 App. Div. 2d 1009, 1009–10, 619 N.Y.S.2d 449 (1994), appeal denied, 85 N.Y.2d 804, 650 N.E.2d 414,

626 N.Y.S.2d 755 (1995).

In the present case, Old Colony does not dispute that the contract provides means by which to obtain equitable adjustments in time or costs due to delays beyond its control and requires specific procedures to be followed in order to obtain such relief. Old Colony also does not dispute that it did not adhere to those requirements: written notice stating the general nature of the claim within thirty days of the event giving rise to the claim; and notice of the amount or extent of the claim with supporting data prepared in accordance with contract requirements within sixty days of the event. Old Colony does not contend that the town *waived* these requirements. Rather, it contends that the town *modified* the contract through its approval of the change orders.

"Whether the parties to a contract intended to modify the contract is a question of fact. . . . The resolution of conflicting factual claims falls within the province of the trial court. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole." (Citations omitted; internal quotation marks omitted.) *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 762, 674 A.2d 1313 (1996). We conclude that the trial court's finding that there was no contract modification was not clearly erroneous.

The record reveals the following relevant facts. As we previously indicated, in three instances in which Old Colony encountered unanticipated conditions, the project engineer signed off on change orders drafted by Old Colony. Those change orders itemized unit costs for additional work. Above those details, under the heading of description of change or proposal, Old Colony had noted in each order that the impact to the schedule had not been determined and that additional time was warranted or would be incorporated into the schedule. Nothing in the change orders addressed the contractual provisions for notice or the subject of notice. Nothing in the change orders indicated how much additional time would be warranted or whether further documentation would be necessary. "For a valid modification to exist, there must be mutual assent to the meaning and conditions of the modification and the parties must assent to the same thing in the same sense." (Internal quotation marks omitted.) *Torgerson* v. *Kenny*, 97 Conn. App. 609, 616, 905 A.2d 715 (2006), cert. denied, 281 Conn. 913, 916 A.2d 54 (2007). There is no such evidence in the present case.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] Although our appellate courts have not previously examined termination for convenience clauses, they are a common feature in government and private construction contracts. See D. Rosengren, 13 Connecticut Practice

Series: Construction Law (2005) § 1:18, p. 24. Termination for convenience clauses originated in federal military contracts in order to avoid contractual procurement requirements after the cessation of hostilities, but have "evolved into a principle for [g]overnment contracts of far-ranging varieties, both civilian and military." *Krygoski Construction Co.* v. *United States*, 94 F.3d 1537, 1540–41 (Fed. Cir. 1996), cert. denied, 520 U.S. 1210, 117 S. Ct. 1691, 137 L. Ed. 2d 819 (1997). Unlike federal contracts, no state regulations dictate the requirements and obligations attendant to termination for convenience in municipal contracts. As in the present case, such obligations are generally dictated by the terms of the contract.

[2] The complaint also sought recovery under the theories of quantum meruit and breach of the duty of good faith and fair dealing. The trial court deemed the former unavailable to Old Colony after determining that it had a remedy under a valid, enforceable contract. The trial court dismissed the latter for failure to make out a prima facie case. Those determinations are not at issue in this appeal.

[3] The town also asserted counterclaims relating to allegedly defective work performed by Old Colony, but it abandoned those claims.

[4] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[5] As examples of remedies not premised on default, Old Colony suggests that the town could seek relief for noncompliance with laws and regulations, the correction and removal of defective work, and insurance and indemnification obligations that survived the default. We note, however, that conduct relating to several of these concerns also constitutes events that justify termination for cause under the contract.

[6] In *Tishman Construction Corp.* v. *New York*, 228 App. Div. 2d 292, 293, 643 N.Y.S.2d 589 (1996), a case cited by Old Colony, the court reached a contrary result in the context of counterclaims for damages incurred to cure the contractor's alleged breach as well as for alleged overpayments. In that case, the city had contended that it was permitted to assert claims that otherwise would have been available had it terminated for cause by virtue of certain generic contract provisions reserving defenses. The New York court rejected the city's position, noting: "[T]he [c]ity cannot prevail by citing [§§] 20.4 ('All Defenses Reserved') and 21.2 ('No Waivers') for the proposition that the [c]ity's rights in any and all circumstances were without limitation. Such a sweeping claim—or, rather, disclaimer—defeats the principle that a contract sets forth the respective rights and liabilities between the parties." Id. In the present case, by contrast, the town is not relying on such generic reservations, which also are included in the parties' contract, but, rather, a broad reservation of rights and remedies in the termination for convenience provision itself.

[7] See *United Partition Systems*, *Inc.* v. *United States*, 90 Fed. Cl. 74, 95 (2009) (after terminating contract for convenience, "the government may not obtain reprocurement costs for work that it prevented [the contractor] from performing"); *TRG Construction*, *Inc.* v. *Water & Sewer Authority*, 70 A.3d 1164, 1167–68 (D.C. 2013) ("[u]pon terminating a contract for convenience, the government loses whatever right it has to hold the contractor responsible for correcting deficiencies in the work included in the terminated portion of the contract" [internal quotation marks omitted]); *Paragon Restoration Group*, *Inc.* v. *Cambridge Square Condominiums*, 42 App. Div. 3d 905, 906, 839 N.Y.S.2d 658 (2007) ("[w]e conclude that the first counterclaim should have been dismissed against [the] plaintiff to the extent that it sought an offset for the costs of completing the project because, [w]here [the defendant] elects to terminate for convenience . . . whether with or without cause, it cannot counterclaim for the cost of curing any alleged default" [internal quotation marks omitted]); *Tishman Construction Corp.* v. *New York*, 228 App. Div. 2d 292, 293, 643 N.Y.S.2d 589 (1996) ("Had the [c]ity wished to pursue these claims, [the] plaintiff should have been terminated under [§] 16 of the agreement, which provides for recouping the expense of curing [the] plaintiff's default. Where the [c]ity elects to terminate for convenience, as provided in [§] 15, whether with or without cause, it cannot counterclaim for the cost of curing any alleged default . . . .").

[8] In light of this conclusion, we need not reach Old Colony's claim that Judge Tanzer improperly adopted Judge Young's decision on this issue as the law of the case.